In the Matter of the Arbitration between FRANK J. UDDO, Respondent, and FRANK G. TAORMINA, Appellant.

First Department, June 18, 1964.

*Thomas C. Mason* of counsel (*H. Richard Schumacher* with him on the brief; *Cahill, Gordon, Reindel & Ohl,* attorneys), for appellants.

*Hyman R. Friedman* of counsel (*Friedman & Friedman,* attorneys), for respondent.

STEUER, J. The parties to this dispute are stockholders and directors of nine affiliated corporations. The corporations, each in a distinct phase, are engaged in the food-processing business on a large scale. The business was originally in the hands of an individual, the progenitor of the Uddo family. He took in as a partner his son-in-law, the respondent Frank G. Taormina. Subsequently, the three Uddo sons and five relatives of Taormina became partners. In 1958 the business was incorporated, nine corporations being formed. Each corporation had two classes of stock: the A stock, held by the Uddos; and the B stock, held by the Taorminas. Each class of stock elected five directors to the corporate boards. An 11th director was A. E. Krackov, the attorney for all of these people. After some months Mr. Krackov severed his connection with the families and an agreement was entered into between all the stockholders as to the method for the conduct of the affairs of the corporations. The number of directors was reduced to 10, elected as before. It was provided that if the board of directors was unable to take effective action on any issue, the matter should be resolved by Frank J. Uddo and Frank G. Taormina jointly. These latter were the executive officers of the corporations and, in a sense, the heads of the

respective families. In the event these two were unable to agree, each was to designate an outside person. If their choice fell on the same person, he should resolve the difference. If they made designations of different persons, those two should decide. And if they were unable to reach a conclusion, they should designate a third person whose decision would be final.

In 1963 the managing officers were not in entire accord as to proposals for a public offering of stock. In addition, there were differences between various members as to several minor matters of management, particularly concerning employment of relatives. In this situation the petitioner herein, Frank Uddo, demanded of respondent, Frank Taormina, that they arbitrate some eight issues. Instead, Taormina called a special meeting of each of the boards of directors. Proper notice was given. The meetings were attended by all of the Taormina directors and one of the Uddo directors, namely, Salvador Uddo. All of the eight matters were considered by the boards, and all were unanimously resolved; whereupon Frank Uddo instituted this proceeding demanding arbitration.

Special Term granted the motion to compel arbitration on the ground that the agreement, indisputably made, provided for arbitration in the event that the board of directors was unable to take effective action. Special Term decided that whether effective action was taken is a matter for the arbitrators to decide. The validity of this ruling depends on the meaning of the words "effective action." Ordinarily this would mean resolution by the board of the question before it. And it is quite obvious from the undisputed history of the corporate organizations that this is what is meant. Prior to the making of the agreement the boards consisted of equal numbers of representatives of each of the two families, with an independent extra director. This arrangement for a built-in umpire insured against action being frustrated by tie votes. When the umpire disappeared from the scene, a tie vote became a contingency which had to be provided against. The arbitration provision was designed in order to meet that situation and only became binding if the situation, or one allied to it, such as a failure to obtain a quorum, arose. It may be noted that this interpretation is advanced by the petitioner who concedes that the original provision for an umpire and the succeeding one for arbitration are to obviate the situation arising from a deadlock caused by the directors voting along strict family lines.

It is argued that even if this be the fact, and the claim of an arbitrable question entirely specious, that question is nevertheless for the arbitrators and not for the court. Support for this

contention is based on 7501 Civil Practice Law and Rules, directing that the "court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute." This revokes the prior existing rule that the court could refuse to order arbitration of a claim which was patently frivolous (*Matter of International Assn. of Machinists [Cutler-Hammer, Inc.]*, 297 N. Y. 519). But this rule applied to matters which under the terms of the arbitration agreement were arbitrable (*Alpert* v. *Admiration Knitwear Co.,* 304 N. Y. 1). It does not affect the axiomatic proposition that one can only be compelled to arbitrate when one has agreed to do so, nor its necessary concomitant that whether one has so agreed is a question for the court. Confusion may arise from the holdings interpreting broad clauses in agreements which provide as arbitrable any question that may arise under or in connection with the making, meaning or performance of the particular contract. Under such clauses any question beyond the physical execution of the contract would by its terms be one for the arbitrators (*Matter of Lipman [Haeuser Shellac Co.]*, 289 N. Y. 76). But this does not affect the basic rule that what the parties agreed to and whether they agreed is for the court. It merely means that where they have agreed to arbitrate everything there is nothing for the court to decide beyond that they have so agreed. It would follow that a mere claim, no matter how frivolous, is sufficient to invoke the process.

The agreement to arbitrate in this family-corporate complex as distinct from being all embracing is very limited. It is confined to issues before the board of directors. It does not apply to any dispute that may arise between the family members or even such of them as are stockholders. And it may be observed that when the original demand was made there were no issues before any of the boards of these corporations. Apart from this consideration, it only applies where the board is "unable" to take effective action. There is no showing of any such inability. Actually, the board did take action and there is no question that a majority voted upon and resolved all of the questions upon which arbitration is sought. Far from showing inability, the exact contrary is shown. To put the situation into its legal framework, the petitioner has not shown any issue which is arbitrable under the agreement. The contention he raises is quite different, namely, whether the condition under which an agreement to arbitrate depends has come to pass. Under the restricted agreement to arbitrate, this issue is not arbitrable. It being for the court, no impediment exists for a determination that it is specious.

In order for the petitioner to sustain his position he must, and he does, ignore the action actually taken by the boards. There is no claim that the meetings were illegal. In fact, protest in this regard is very odd indeed. It is pointed out that this meeting was conducted formally, in strict accord with corporate practice, whereas usually meetings were conducted informally. Also, it is claimed that some of the matters considered were not really in dispute, but that the board merely passed resolutions which had been agreed upon. Further, it is asserted that four of the Uddo directors found it difficult to attend and an adjournment was refused. It is not claimed that the failure to grant the adjournment invalidated the meetings. Lastly, the real reason which explains the absence of the Uddo directors is asserted. The Taorminas had prevailed on one of the Uddos, Salvador, who attended the meeting, to vote with them. This was known to the Uddos in advance so they knew that their attendance would be ineffective. It is further claimed that Salvator's votes at the directors' meeting were illegal as in breach of an agreement he had with the other members of his family. It is contended that had Salvador voted as his obligations required, and had the other Uddo directors attended as they would have, a deadlock would have resulted. This would, in turn, have given the right to invoke arbitration.

But this whole house of cards, defective legally in practically every step in the argument, rests upon a false assumption. Salvador was not bound by any agreement to vote in any way on any proposition before the board. Salvador was one of the three brothers, sons of the founder. The three had entered into a written agreement. This agreement refers to the action to be taken by Frank Uddo in the event he and Frank Taormina are called upon to resolve a question that the board is unable to pass upon. It was agreed that a majority of the three should control Frank's actions, and in the event Frank was in the minority the other two should take his place. Clearly this agreement does not affect Salvador's freedom to vote as a director in any way he deemed proper, assuming that an agreement to vote against his better judgment would be legal.

The minority opinion relies on an arbitration clause in a prior agreement. This agreement, dated April 25, 1958, was modified by the present agreement of May 10, 1960. The particular aspects in which the earlier agreement was modified had to do with the control of the corporations and, specifically, with the manner in which a possible deadlock was to be resolved. It changed the former procedure and the former provisions for arbitration. We find it difficult to understand how it can be

urged that the discarded provision still retains vitality even to the extent of leaving to the arbitrators there provided for whether it in fact survives. The difficulty is further enhanced by considering the method of control adopted in the May, 1960, superseding agreement. Recalling that in the event of a block of action by the directors resolution is to be made by Frank Uddo and Frank Taormina, this provision becomes entirely inoperative if any of the persons entitled to demand arbitration under earlier agreements could enforce his rights. Instead of control being vested in the two representatives of the two families, it would be in the power of others to frustrate that control by transferring their power of decision to outside arbitrators.

In a related application one of the Taorminas asked leave to intervene. We believe the denial of this application to have been proper.

Order directing arbitration to proceed and order denying reargument should be reversed on the law and the facts, with costs to appellant, and order denying leave to intervene affirmed, with costs to respondent.

VALENTE, J. (dissenting). I dissent and would affirm the order compelling appellant to arbitrate.

The result reached by the majority may fairly be considered as a subtle revenant of the *Cutler-Hammer* doctrine (*Matter of International Assn. of Machinists* [*Cutler-Hammer*], 271 App. Div. 917, affd. 297 N. Y. 519) which, presumably, was thoroughly and effectively exorcized by former section 1448-a of the Civil Practice Act and the present 7501 Civil Practice Law and Rules. These sections specifically preclude the court from considering '' whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute ''.

The majority opinion succinctly traces the growth and development of the corporate empire and the concomitant equal division of control between the Uddos and the Taorminas. From a simple partnership between petitioner and his son-in-law, Frank G. Taormina, the business burgeoned into a complex of nine corporations. Initially, a stockholders' agreement of April 25, 1958, provided for joint control by the two family factions. That agreement was subsequently amended and modified by two agreements, dated July 17, 1958 and May 10, 1960.

The specific arbitration clause of the modification agreement of May 10, 1960 (par. 5), in its first sentence, reiterates the primary intent of the parties, viz: '' It is intended that control of all nine corporations be vested in Frank J. Uddo and Frank

G. Taormina jointly". There follows the provision for arbitration "If the Board of Directors is unable to take effective action on any issue".

As already noted, the May 10, 1960 agreement was a modification, in a limited area, of the two prior agreements of April 25, 1958 and July 17, 1958. Except as modified, the provisions of the antecedent agreements remained unaffected. The agreement of April 25, 1958 contained a broad arbitration clause. It provided (par. 24) that "All disputes arising out of, under, in connection with or in relation to this agreement, as any alleged breach thereof, shall be submitted to arbitration". The majority opinion recognizes that under such a broad clause "any question beyond the physical execution of the contract would by its terms be one for the arbitrators". Yet, completely ignoring this broad arbitration clause, the majority trenches on the function of arbitrators in imposing its interpretation of the specific clause of the modification contract of May 10, 1960, as being "confined to issues before the board of directors". But even if it were assumed that such interpretation were sound, is not this process of construction of a term of the contract an invasion of the province of arbitrators under the general arbitration clause of the April 25, 1958 contract?

The main thrust of the majority opinion is that "when the original demand was made there were no issues before any of the boards of these corporations", that there was no showing of any inability of the boards to take effective action, and that in fact the boards did take effective action, and, by a majority vote, "resolved all of the questions upon which arbitration is sought". I completely disagree with these conclusions.

In the first place, the record shows (Pet. Exh. D) that the demand for arbitration was dated July 10, 1963 — which antedated the meeting of the boards of directors — and it states that it is made pursuant to all three agreements. Respondent-appellant's affidavits in opposition to the motion to compel arbitration avers: "As of July 30, 1963 the Boards of Directors of the nine corporations were deadlocked and, therefore, were unable to take effective action on the issues as outlined in petitioner's Exhibit 'D'." The admissions in the record refute a major premise of the majority's opinion. Thus, it uncontrovertibly appears that when the demand for arbitration was made, there was a deadlock in the boards of directors and that they were unable to take effective action.

Finally, whether "effective action" was taken by the meetings of the boards of directors in August, 1963 is not for the court to determine, but for the arbitrators. The contracts among

the stockholders, expressly and impliedly, provided for joint control of the corporations by two family groups. Since there was equal division of control, provision was made for arbitration to settle differences which might arise where neither group could prevail. Whether upon the occurrence of a deadlock, either side may, through action not contemplated by the agreement, and in fact contrary to the underlying purposes of the agreement, take any effective action is a matter of the interpretation of the contracts which must be left to arbitration. Considering the entire background of the agreements, I cannot agree with the majority that a claim by petitioner that no effective action under the contract was taken by the boards of directors in August, 1963, after the demand for arbitration was served, is "specious". I would hold that the claim is substantial and must be decided by arbitration, not only under the modification agreement of May 10, 1960, but also pursuant to the original agreement of April 25, 1958. The modification agreement covered only disputes between the chiefs of the two family groups in the event of a deadlock in the board of directors. The arbitration clause of the original agreement survived to confer jurisdiction over all other disputes inclusive of the interpretation and effect of the modification agreement.

STEVENS and EAGER, JJ., concur with STEUER, J.; VALENTE, J., dissents and votes to affirm in opinion, in which BREITEL, J.P., concurs.

Orders, entered on October 1, 1963 and January 3, 1964, reversed on the law and on the facts, with $20 costs and disbursements to appellant, the motion to direct arbitration denied, and the petition dismissed. Order, entered on January 3, 1964, unanimously affirmed, with $20 costs and disbursements to respondent.