27 N.Y.2d 357 (1971)
In the Matter of the Arbitration between Methodist Church of Babylon, Appellant, and Glen-Rich Construction Corp., Respondent.
Court of Appeals of the State of New York.
Submitted November 11, 1970.
Decided January 6, 1971.
Edwin Efros for appellant.
Harry Rappaport for respondent.
Chief Judge FULD and Judges BURKE, SCILEPPI, and BERGAN concur with Judge GIBSON; Judge BREITEL dissents and votes to reverse in a separate opinion in which Judge JASEN concurs.
*358 GIBSON, J.
The appeal involves the provisions for arbitration, and more particularly the conditions precedent to arbitration, expressed in a general contract for the construction of a building. Prior to completion, leakage occurred in the duct work for an air conditioning and hot air heating system, as installed by a subcontractor, and remedial repairs were made. Following the completion of the contract and final payment by the owner, there was further leakage. The subcontractor denied responsibility and his position, predicated on the contention that the plans called for airtight, but not watertight construction, was sustained upon an arbitration to which the owner was not a party. Meanwhile, the general contractor, with the owner's approval, and in accordance with new plans prepared by the owner's architect, had corrected the difficulty at a cost of $12,640.33. The contractor's claim of faulty workmanship by the subcontractor was supported before the arbitrator by the owner's architect and engineer; the owner's and the contractor's interests were at this *359 point united; and the contractor asserts that, having taken a position favorable to the owner and adverse to the subcontractor, and having to that extent relied, albeit mistakenly, on the professional judgment of the owner's architect and engineer, it could not, at that time, have consistently faulted the owner's plans and specifications. Indeed, article 20 of the contract vested in the architect the power to decide, subject to arbitration, disputes concerning defects appearing within a period of one year from the date of substantial completion of the contract, notwithstanding final payment; and to this extent the general contractor would have been obliged to submit to the architect, for his preliminary determination, the question of the architect's own fault.
When the contractor was defeated on its arbitrated claim against the subcontractor for the $12,640.33 costs of correction, incurred following the final payment under the contract, the contractor commenced an action against the owner for those costs. The owner moved to stay the action on the ground that the subject of the dispute was encompassed by the general contract which provided that all disputes be arbitrated. Special Term sustained this position and ordered all proceedings in the action stayed pending arbitration of the controversy between the parties. Acquiescing in this decision, the contractor took no appeal, but served a notice and demand for arbitration. The owner then moved to stay arbitration on the ground that certain conditions precedent to the right to arbitration contained in the contract had not been met. The contractor argued that the owner, by the position taken in obtaining a stay of the action, when it asserted the right to arbitration instead, had waived any right to seek a stay of the arbitration, a contention that we do not reach.
Denying the stay application, Special Term held that a contract provision (article 40) calling for a demand for arbitration before final payment, except as otherwise provided in the contract, did not vitiate the contractor's right, inasmuch as another contract provision (article 20, above referred to) did, in fact, relate to correction of work after substantial compliance and did provide for arbitration notwithstanding final payment. The court found it unnecessary to deal with other contentions advanced by the owner relating to conditions precedent (these *360 concerning articles 16 and 39 of the contract), considering that they were questions for the arbitrator.
The Appellate Division reversed this disposition, on the law and the facts, and stayed arbitration "pending determination by the court, pursuant to CPLR 7503 (subd. [a]) of the issues relating to noncompliance with the time requirements and conditions precedent for arbitration, found in articles 16, 20, 39 and 40 of the * * * contract" (29 A D 2d 773). On remand, Special Term dealt with these questions, finding for the contractor and ordering arbitration and the Appellate Division unanimously affirmed, on the Special Term's opinion (32 A D 2d 962). Appeal is taken by our leave.
Of the contract provisions to which allusion has been made, article 16 requires that the architect be given written notice of extra costs and article 39 provides that the architect shall within a reasonable time make decisions, subject to arbitration, on all claims of the owner and contractor. Special Term found that articles 16 and 39 had not been complied with and appellant owner continues to insist that arbitration is thereby barred; but Special Term found, and its findings were sustained at the Appellate Division, "it would be unreasonable now to require that simultaneously with the claim against the subcontractor, that the General Contractor should have made a formal claim against the Owner and thereby have charged the architect and engineer with having prepared and approved inadequate plans and specifications" and, further, that "the reasonable concurrence by the General Contractor with the Owner and its architect and engineer in their conclusion that the leaks were due to faulty construction, and its decision to proceed first against the subcontractor alone and to withhold any claim against the Owner until the prior arbitration had been completed should not now form the basis for precluding an arbitration of this dispute, notwithstanding the lack of compliance with Articles 16 and 39."
Implicit in the finding that the parties were, at the time, in "reasonable concurrence" as to the subcontractor's fault, is the conclusion that there then existed no dispute between the parties, within the contemplation of articles 16 and 39, and hence that those articles were inapplicable in any event. Governing, instead, are articles 20 and 40. Article 20, dealing with corrective work after completion, the precise problem in this case, *361 requires the owner to give notice of observed defects with reasonable promptness and provides that all questions arising under this article "shall be decided by the Architect subject to arbitration, notwithstanding final payment." Recognizing, as we have done, and as did the Special Term, that, realistically, the contractor was precluded from formal observance of article 20; and considering, too, the inconsistency and, indeed, futility of a submission to the architect of a claim which would have to be predicated on his own fault and which he had, indeed, predetermined by assigning fault to the subcontractor; it is clear that article 20 rendered operative the provisions of article 40, the arbitration article, which the contractor has properly invoked.
The order of the Appellate Division should be affirmed, with costs.
BREITEL, J. (dissenting).
I dissent and vote to reverse and grant the petition to stay arbitration.
The agreement involved is the standard contract for the construction of buildings developed by the American Institute of Architects (Modern Legal Forms, § 1611). It is used widely in this State and in the Nation. Its provisions, and particularly its provisions for arbitration, have often been before the courts, and are well known to people in the industry.
A notable, but not a unique, feature of the standard contract are the several conditions precedent provided before arbitration may be effectively demanded. The conditions have the purpose of preventing afterthought claims by builders, contractors, and subcontractors. These are usually claims for damages due to delay, the cost of extras, and the almost endless series of possible claims which can and are made on construction jobs after everything has been done and final payment made. Then the one who is to pay may be unwittingly deprived of his choice for what he will be responsible. A key cut-off point in the standard contract is final payment and a key figure in the use of the conditions precedent is the architect who is supposed to serve as a middle or third party between the owner-builder and the contractor.
There is no dispute in this case, and the opinion for the majority reveals this candidly, as did indeed the opinion at Special Term, that the conditions precedent to arbitration in this case were not satisfied. The excuse for avoiding fulfillment of *362 the conditions is that at an earlier stage it was in the interest of the owner-builder and the contractor to unite against the subcontractor who had, they believed, failed in performance. This was true, but this provides no excuse for not satisfying the conditions precedent. In language known and used by lawyers since almost the beginning of the profession, and known and used by people in the construction business, the contractor could and would have reserved his rights by making his claims conditionally. That is, he could and would have asserted that the subcontractor was the defaulter and the one to respond in damages, but, if for any reason, that should not turn out to be so, then whatever the contractor had to do to correct the failures attributed to the subcontractor, about which the owner-builder was complaining, would then be at the expense of the owner-builder. In this way all the likely and unlikely consequences and superficial inconsistencies suggested would vanish as quite inconsequential.
Instead of complying with the explicit requirements in the standard contract the contractor never indicated in any writing that he would look to the owner-builder for payment, if it should eventuate that the subcontractor was not liable for the correction of the faulty conditions. True, there was some testimony to an alleged oral conversation but Special Term expressly declined to so find, let alone consider its legal effectiveness if there had been such a conversation. Since the subcontractor is employed by the contractor, it is readily seen how the owner-builder could have been misled by the contractor's conduct. This in the face of article 16 of the standard contract which provides: "If the Contractor claims that any instructions by drawings or otherwise involve extra cost under the Contract, he shall give the Architect written notice thereof within a reasonable time after the receipt of such instructions, and in any event before proceeding to execute the work, except in emergency endangering life or property, and the procedure shall then be as provided for changes in the work. No such claim shall be valid unless so made." It would unnecessarily protract this discussion to detail how flagrantly the other conditions precedent remain unfulfilled. Moreover, it suffices that the contractor and the several courts which have considered the case have accepted the noncompliance to be so, as does the opinion for the majority.
*363 Of course, conditions precedent, like any other terms of a contract, may be obviated by waiver, valid modification, estoppel, abandonment, rescission, or fraud (Restatement, Contracts, §§ 294-304; Ann., Private Construction Contract  Extras, §§ 19-21, 2 ALR 3d 620, 648-658, infra). But there are no facts established sufficient to sustain such an issue.
Instead, Special Term in this case, approved by the Appellate Division, and now by this court, reconstructed the relationship and the agreement between the parties, plainly in the face of and contrary to the provisions of the standard contract, and held that arbitration should proceed despite noncompliance with the conditions precedent.
The courts in the past have accorded greater respect to the standard contract provisions for arbitration, as they have to all prescribed conditions precedent in arbitration agreements (Matter of Exercycle Corp. [Maratta], 9 N Y 2d 329, 335; Matter of Board of Educ. [Heckler Elec. Co.], 7 N Y 2d 476, 481; Matter of Frouge Corp. [New York City Housing Auth.], 26 A D 2d 269, 272; Matter of Brown & Guenther [North Queensview Homes], 18 A D 2d 327, 330-331; Matter of Board of Educ. [Bernard Assoc. No. 3], 11 A D 2d 1038; Domke, Commercial Arbitration, § 19.03; cf. Matter of Greater N. Y. Term. [Horn Constr. Co.], 12 A D 2d 820; as to conditions precedent in labor arbitration agreements, Matter of Long Is. Lbr. Co. [Martin], 15 N Y 2d 380, esp. at p. 386; as to role of architect in construction contracts, Ann., Architect's Certificate  Liability, 43 ALR 2d 1227; as to the strictness with which conditional stipulations for extra work are considered, Ann., Private Construction Contract  Extras, 2 ALR 3d 620).
It hardly needs expression that the present departure seriously debases the value of the protective clauses in the standard contract which have the salutary purpose of preventing dishonest or afterthought claims by requiring precautions in writing timely made.
Order affirmed.