In the Matter of the Arbitration between the ACTING SUPERINTENDENT OF SCHOOLS OF LIVERPOOL CENTRAL SCHOOL DISTRICT, Respondent, and UNITED LIVERPOOL FACULTY ASSOCIATION, Appellant.

In the Matter of the Arbitration between the ACTING SUPERINTENDENT OF SCHOOLS OF LIVERPOOL CENTRAL SCHOOL DISTRICT, Appellant, and UNITED LIVERPOOL FACULTY ASSOCIATION, Respondent.

Fourth Department, July 12, 1976

*Bernard F. Ashe (Richard Heffern* of counsel), for United Liverpool Faculty Association, appellant.

*O'Hara, O'Hara & Vars (Edward O'Hara* of counsel), for Acting Superintendent of Schools, Liverpool Central School District, respondent.

CARDAMONE, J. These are two related proceedings pursuant to CPLR 7503 (subd [b]) to stay arbitration under the collective bargaining agreement between the Liverpool Central School District (School District) and the United Liverpool Faculty Association (Faculty Association). In case No. 1 (Gargiul) the respondent Faculty Association appeals from an order at Special Term in Onondaga County which granted the School District's petition and stayed arbitration of Mrs. Gargiul's grievance. In case No. 2 (Schwab) the School District appeals from an order of Special Term in Onondaga County which dismissed its petition and ordered arbitration of Ms. Schwab's grievance.

Both demands for arbitration arise under the arbitration clause contained in the teachers' collective bargaining agreement, effective July 1, 1974 through June 30, 1976 which permits either party not satisfied with the decision at stage 3 to submit the grievance to arbitration. If so submitted, the decision of the arbitrator is final and binding upon all parties.

The contractual definition of "grievance" is the crux of both appeals. Grievance is defined in the agreement:

"Grievance shall mean any claimed violation, misinterpretation, or inequitable application of the existing laws, rules, procedure regulations, administrative orders or work rules of

the District, which relates to or involves Teachers' health or safety, physical facilities, materials or equipment furnished to teachers or supervision of Teachers; provided, however, that such term shall not include any matter involving a teacher's rate of compensation, retirement benefits, disciplinary proceeding or any matter which is otherwise reviewable pursuant to law or any rule or regulation having the force and effect of law."

The facts of each case discussed respectively follow.

Case No. 1 (Gargiul). Mrs. Lorraine Gargiul, age 40, was a kindergarten teacher employed at two elementary schools in Liverpool. On November 27, 1974 Mrs. Gargiul became ill and commenced a sick leave period. By letter to the superintendent dated February 17, 1975 she requested permission to return to work effective March 17, 1975. The superintendent had previously insisted in August, 1974 that Mrs. Gargiul be examined by the school district physician. After Mrs. Gargiul began her sick leave the superintendent reiterated by letter dated February 5, 1975 that she must be examined by the school physician before returning to her teaching position. This demand was repeated in writing to Mrs. Gargiul after receipt of her letter of intent to return. The grievant stated that she was willing to be examined by any recommended woman physician. By resolution dated March 17, 1975 the board of education directed that Mrs. Gargiul submit to a physical examination by the school district physician before returning, if that physician deemed such a physical examination necessary after reviewing her medical history.[1] Mrs. Gargiul was placed on a leave of absence until the matter was resolved.

Thereafter on April 10, 1975 Mrs. Gargiul commenced her grievance alleging that the School District violated the collective agreement because it denied her pay and fringe benefits and applied existing laws, rules and administrative orders of the district inequitably. She sought payment of salary and benefits from the date the district "arbitrarily discontinued contractual benefits". The School District's principal denied the grievance on the ground that no grievable matter under the contract definition of "grievance" was presented. The

---

1. The School District's demand for a physical examination is based on Education Law, § 913, which authorizes the board of education to require employees to submit to a medical examination by the "school medical inspector" or a physician of the employee's choice.

superintendent and the board of education subsequently approved the denial without formal explanation. When the Faculty Association demanded arbitration, the School District commenced the present proceeding to stay arbitration on August 5, 1975.

On August 6, 1975 Mrs. Gargiul individually initiated an appeal to the Commissioner of Education pursuant to section 310 of the Education Law alleging denial of contract, statutory and constitutional rights by the School District and seeking an order permitting examination by a female physician plus recovery of lost salary, lost insurance benefits and damages for pain and suffering.[2] The School District thereafter moved to have the arbitration stayed on the additional ground that the right to arbitrate was waived by institution of the appeal to the commissioner.

The Faculty Association in its answer alleged essentially that the grievance asserted a presumptively arbitrable dispute. It pointed out that it was a party only in the demand for arbitration and not a party to the section 310 appeal in which different rights and issues were involved. Special Term granted the School District's petition and stayed arbitration on the ground that the alleged grievance involved a disciplinary proceeding expressly excluded from arbitration by the contract's definition of a "grievance".

Case No. 2 (Schwab). Sharon Schwab commenced employment with the School District as a probationary teacher in the 1973-1974 school year. On May 21, 1975 she received an unsatisfactory supervisory report from her principal and was advised shortly thereafter that she would not be recommended for tenure when her probationary period expired on August 31, 1975. The School District alleges that it complied with the procedural requirements of section 3031 of the Education Law. On July 25, 1975 Ms. Schwab and the Faculty Association filed a grievance alleging that the School District violated the recognition and fair practice clause, the joint code of ethics clause, the evaluation of probationary teachers clauses, and the final conference clause of the contract. The first three steps in the grievance proceeding were unsuccessful. The board of education rejected the grievance on the ground that it involved a denial of tenure and a teacher disciplinary

---

2. The commissioner dismissed Mrs. Gargiul's appeal on February 24, 1976 on the ground that the School District acted within its authority under Education Law, § 913 and did not violate Executive Law, § 296 by demanding the physical examination.

proceeding which were excluded from arbitration by the definition of "grievance".

On September 12, 1975 the Faculty Association demanded arbitration. The School District then commenced the present proceeding to stay arbitration; the Faculty Association answered and alleged essentially that a presumptively arbitrable dispute was presented. Special Term dismissed the petition and ordered arbitration finding that the dispute alleged violations of rules regarding "supervision of Teachers" and thus constituted an arbitrable "grievance" under the contract.

CPLR 7503 (subd [c]) provides only limited grounds for staying arbitration. In reviewing applications to stay arbitrations demanded under collective agreements, the following specialized rule has emerged.

"Where a collective bargaining agreement contains an arbitration clause, disputes arising thereunder are presumptively arbitrable in the absence of clear contractual language to the contrary * * * The courts can only stay arbitration in the public employment relations field where the agreement to arbitrate expressly excludes the subject matter contested or where an identifiable public policy prohibits arbitration of the subject matter". (*Belmont Cent. School Dist. v Belmont Teachers Assn.,* 51 AD2d 653, 654; accord, *Matter of Board of Educ. [Buffalo Council of Supervisors and Administrators],* 52 AD2d 220; *Matter of Board of Educ. [Auburn Teachers Assn.],* 49 AD2d 35.)

The School District has not articulated a public policy barring arbitration of the present disputes. Thus, the only question presented on these appeals is whether the contractual arbitration clause and the related definition of "grievance" expressly exclude the subject matter of the disputes alleged. It must be noted that the definition of "grievance" in the present agreement was drafted so as to include certain matter and also contained a proviso to exclude from arbitration other subject matter. The excluded subjects are: "any matter involving a Teacher's rate of compensation, retirement benefits, disciplinary proceeding or any matter which is otherwise reviewable pursuant to law or any rule or regulation having the force and effect of law." Such an express exclusionary clause was not included in the definition of "grievance" in the cited cases (see, e.g., *Matter of Board of Educ. [Buffalo Council of Supervisors and Administrators], supra; Belmont Cent. School Dist. v Belmont Teachers Assn., supra; Matter of*

*Board of Educ. [Auburn Teachers Assn.], supra).* Thus, the instant case directly presents the question whether the asserted disputes are arguably within the contract language and presumptively arbitrable or whether the exclusionary proviso "unmistakably" removes the disputes from arbitration. As stated by Justice GOLDMAN in *Matter of Board of Educ. (Buffalo Council of Supervisors and Administrators), supra,* at p 224: "if the arbitration clause is 'susceptible of an interpretation that covers the asserted dispute', then it is for the arbitrator to decide whether the dispute comes within the scope of the agreement to arbitrate".

We turn first to the Gargiul grievance which alleges that the School District "inequitably applied existing laws, rules and administrative orders" to her and violated the agreement's compensation clause (salary and health insurance benefits). The supporting papers indicate that these allegations are based on the School District's refusal to allow Mrs. Gargiul to return to work unless she submitted to a medical examination by the school physician. Special Term reasoned that the dispute arose from the district's decision to put Mrs. Garguil on leave without pay, and thus involved a "disciplinary proceeding" within the exclusionary proviso, and hence was not an arbitrable grievance. On appeal, the respondent School District equates the leave without pay with a disciplinary suspension as support for Special Term's determination and argues, in the alternative, that the alleged dispute may be excluded from arbitration because it involves "a teacher's rate of compensation".

Although these are possible interpretations of the arbitration clause and the contract definition of "grievance", they are not the sole, unmistakable interpretations. An arbitrator could reasonably conclude that the asserted dispute, which arises out of the School District's medical examination requirement, involves an "inequitable application of the existing laws, rules, procedural regulations, or work rules" relating to "Teachers' health". Because the arbitration clause is " 'susceptible of an interpretation that covers the asserted dispute'" (see *Matter of Board of Educ. [Buffalo Council of Supervisors and Administrators],* 52 AD2d 220, 224, *supra)* and the alleged dispute is not "unmistakably" excluded, the grievance is presumptively arbitrable. We conclude, therefore, that Special Term erred in foreclosing the arbitrator from deciding the issue of arbitrability *(Matter of Board of Educ. [Buffalo Coun-*

*cil of Supervisors and Administrators], supra; Belmont Cent. School Dist. v Belmont Teachers Assn.,* 51 AD2d 653, *supra).*

Nor does the general language of the exclusionary proviso concerning "any matter which is otherwise reviewable pursuant to Law", provide a clear, unmistakable and unambiguous basis for barring arbitration (cf. *Matter of City School Dist. of City of Poughkeepsie [Poughkeepsie Public School Teachers Assn.],* 35 NY2d 599, 604-605). Concededly, public employers and their employees' unions have agreed, and will, in the future agree, to exclude specific subject matter from binding arbitration (see, e.g., *Matter of Legislative Conference of City Univ. of N.Y. v Board of Higher Educ.,* 38 AD2d 478, affd 31 NY2d 926; *Central School Dist. No. 1 v Three Vil. Teachers Assn.,* 39 AD2d 466). The present agreement, however, fails to exclude expressly the subject matter of Mrs. Gargiul's grievance. The commercial arbitration cases relied on by Special Term and the School District's counsel are distinguishable (see, *Matter of Exercycle Corp. [Maratta],* 9 NY2d 329; *Matter of Uddo [Taormina],* 21 AD2d 402; *Matter of Methodist Church of Babylon [Glen-Rich Constr. Corp.],* 32 AD2d 962, affd 27 NY2d 357). The School District's further contention that the teacher's appeal to the commissioner pursuant to section 310 of the Education Law, constituted a waiver of the Faculty Association's demand for arbitration, is misplaced. Two different parties were involved, the Faculty Association's demand preceded the teacher's appeal, and no evidence indicates that the Faculty Association controlled or had any interest in the teacher's decision to appeal *(Matter of City School Dist. of City of Poughkeepsie [Poughkeepsie Public School Teachers Assn.],* 35 NY2d 599, 605, *supra;* cf *Matter of United Paper Mach. Corp. [Di Carlo],* 19 AD2d 143, affd 14 NY2d 814).

We turn next to the Schwab grievance (case No. 2). Ms. Schwab's grievance asserts violations of six specific contractual provisions by the district including the failure to: give timely notice of her termination; point out weaknesses and make suggestions for improvement in supervisory reports; state whether Ms. Schwab was "performing in a satisfactory manner" in supervisory reports, which were all allegedly positive; and make "all forms and information" available at a final conference with a supervisor. Special Term correctly applied the stated general rule and properly concluded that the grievance alleged a violation of rules or procedural regula-

tions relating to the "supervision of Teachers" and the grievance alleged was presumptively arbitrable. Further, the alleged violation of rules concerning supervision and evaluation of probationary teachers does not "unmistakably" fall within the express language of the exclusionary proviso. An arbitrator may review and remedy contract claims of probationary teachers without pre-empting the tenure issue (see, e.g. *Bellmore-Merrick Cent. High School Dist. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167; *Board of Educ. v Chautauqua Cent. School Teachers Assn.,* 41 AD2d 47).

The order in case No. 1 (Gargiul) should be reversed and arbitration directed. The order directing arbitration in case No. 2 (Schwab) should be affirmed.

MOULE, J. P., SIMONS, DILLON and WITMER, JJ., concur.

Order, entered December 12, 1975, unanimously reversed, without costs, petition granted and arbitration directed in accordance with opinion by CARDAMONE, J.

Order, entered December 17, 1975, unanimously affirmed, without costs.