Jones, J.
In the somewhat unusual circumstances of this case we hold that parallel procedures, each designed to challenge the refusal of a school district to appoint a teacher to a specified position, may go forward concurrently ■ — • the one, appeal to the Commissioner of Education at the instance of the teacher, and the other, resort to contract grievance procedures, including arbitration, at the instance of the union.
In December, 1970 the Board of Education of the City School District of the City of Poughkeepsie entered into a collective bargaining agreement with the Poughkeepsie Public School Teachers Association. That agreement prescribed the terms and conditions of employment for teachers employed in the *603 Poughkeepsie School District and made provisions for the administration and resolution of disputes and grievances arising thereunder.
In September, 1965 at the request of the. school district, Raylene Shayo, a tenured first grade teacher, had transferred to the position of teacher of reading skills. She remained in that position until it was abolished in May, 1971, when she was transferred and appointed to a position under the Elementary and Secondary Education Act Program. In January, 1972, it came to the teacher’s notice that a position as first grade teacher would become available on March 1, 1972, and she applied for appointment. It was the failure of the school board to act favorably on her application for that position which gave rise to the underlying dispute between the parties.
To remedy what was thought to be the injustice done the teacher, two separate and distinct procedures were launched simultaneously on April 5, 1972. In her own name the teacher appealed to the State Commissioner of Education pursuant to section 310 of the Education Law, grounding her petition in alleged violation by the school board of her rights both under section 2510 of the Education Law and under the 1970 collective bargaining agreement between the school district and the union. On the same day the union instituted grievance procedure under the terms of the collective bargaining agreement, asserting violation of the provisions of that agreement with respect to promotional policy within the school system. The grievance procedures consisted of four stages — three internal stages, at the supervisory, superintendent’s and board of education levels, respectively, and a fourth, external stage of final and binding -arbitration.
The chronology thereafter of the two concurrently pursued, parallel remedies follows. On April 11, 1972 the Stage 2 grievance procedure hearing was held before the district superintendent’s designee. On April 12 that designee dismissed the grievance because of the pending appeal, on the other track, to the Commissioner of Education. On April 26 the Board of Education interposed its answer in the section 310 proceeding. On May 5, the union requested a Stage 3 grievance procedure hearing before the district board of education. On May 13 the teacher served her reply in the section 310 proceeding. On May *604 23 the union was informed that on May 15 the district hoard had declined to hear the grievance, again because of the pending appeal to the Commissioner of Education. On June 27 the district clerk received the union’s demand for arbitration of the grievance under the administration of the American Arbitration Association, i.e., Stage 4, and the final stage, of the grievance procedure. On June 30 argument was held on the section 310 appeal to the Commissioner of Education, at which occasion the teacher withdrew her claim to relief based on the provisions of the collective bargaining contract, choosing in that proceeding thereafter to rely solely on the provisions of section 2510 of the Education Law.
On July 7, 1972 the Board of Education instituted the proceeding now before us for a stay of arbitration under CPLR 7503 (subd. [b]) on three grounds: that the arbitration agreement between the parties had not been complied with; that the claim sought to be arbitrated was time-barred under CPLR 7502 (subd. [b]); and that arbitration had been waived and abandoned by reason of the institution and prosecution of the teacher’s appeal to the Commissioner of Education under section 310. On October 3, 1972 Special Term granted a stay of arbitration.
On January 3,1973 the Commissioner of Education dismissed the section 310 appeal on the merits with respect to the teacher’s claim under section 2510. He made no disposition with respect to her claim under the collective bargaining agreement, which claim had been withdrawn from the scope of his review.
In July, 1973 the Appellate Division reversed Special Term, dismissed the petition for a stay of arbitration and remitted the matter to arbitration. We now affirm the determination at the Appellate Division.
The parties to this litigation, with the union acting on behalf of the complainant teacher, made explicit provision in their collective bargaining agreement as to procedures for the resolution of disputes which might arise. Recognizing the availability both of proceedings under the Education Law and of contract grievance procedures and in apparent acknowledgment that the pursuit of both remedies would be inappropriate, at least in certain instances, the parties agreed in section 2.1 of article XXIV of their agreement “ that this grievance procedure *605 shall not apply, * * * to any disciplinary proceedings under §§ 2508 and 2509 of the Education Law, or to any matter of compensation which may be appealed to the Commissioner of Education under § 310 of the Education Law ” (emphasis added). Obviously this exclusionary clause does not extend to a section 310 appeal in which a claim is asserted, as here, by a teacher that she is entitled to appointment to a particular position in the school system. Whether this omission was intentional or inadvertent does not appear on the record before us. For our purposes it suffices that the present claim does not fall within the terms of the agreed-on exclusion.
Turning then to what appear at least superficially to be duplicative procedures for the same ultimate remedy, we make two observations. The two procedures are not identical, and in any event, neither is entitled to a priority of recognition over the other in the circumstances of this case.
It is at least questionable whether the appeal procedures under section 310 of the Education Law, while clearly open to an aggrieved teacher, would have been available to the union. On the other hand the grievance procedures under the collective bargaining agreement, through the first three internal stages, would have been available to the union or to the teacher or to both. The fourth stage, that of external arbitration under the auspices of the American Arbitration Association, however, was available only to the union; no right to arbitration is accorded to an aggrieved teacher by the terms of the collective bargaining agreement.
Of greater significance in the disposition of this appeal is the fact that both remedies were here pursued concurrently and with such diligence that under the circumstances neither can be said to have been waived or abandoned nor can a priority status be accorded to either. Both proceedings were initiated on April 5,1972. Thereafter each was prosecuted without delay, in conformity with applicable time schedules (except possibly with reference to Stage 4 arbitration in the grievance procedure as to which we express no opinion), and according to such interlaced and alternate steps that no factual conclusion can accurately or fairly be drawn that the teacher and the union (assuming the similarity if not the identity of their common interests) preferred one remedy to the other. While the school board indi *606 cated a clear preference for the section 310 track, the conduct of the teacher and the union discloses only a calculated intention to pursue both remedies concurrently and vigorously.
There was in fact neither waiver nor abandonment of either section 310 or grievance procedures. Properly and fairly analyzed, arbitration under this collective bargaining agreement can only be characterized as an integral part of the grievance procedure. Arbitration could not be sought prior to exhaustion of the Stage 1, Stage 2 and Stage 3 procedures laid down in the collective bargaining agreement. This is not a case in which it may be said under the doctrine of election of remedies that a party having chosen to institute a section 310 appeal may not be permitted weeks later to turn to arbitration.*
In the circumstances of this case, while there are aspects of duplication in the prosecution of the parallel procedures, it appears that there is here no prospect of incongruity of double result. The ultimate objective of both procedures is the same, of course, but the grounds urged for relief are discrete. The Commissioner of Education has rejected the claim of the teacher based on the provisions of section 2510 of the Education Law. That claim now appears on the record before us to be concluded. On the other hand, the grievance now to be arbitrated is expressly predicated only on the provisions of sections 1.1 and 1.2 of article XI of the collective bargaining agreement, a claim not addressed by the Commissioner of Education.
To the extent that the present predicament of the parties, in consequence of our affirmance, may expose them to unnecessarily duplicative proceedings, the remedy, if any be desired by both sides, lies, of course, in an amendment of the terms of the collective bargaining agreement explicitly to reflect the resolution to be agreed on.
We turn finally to the contention (which appears on brief to have been withdrawn by the school board) that a stay should *607 be granted in any event since arbitration of the present claim is time-barred under the provisions of CPLR 7502 (subd. [b]). That contention is predicated on the provision of the collective bargaining agreement that arbitration, if any be desired at the fourth stage of the grievance procedure, must be sought “ within ten days after receipt of the written decision at Stage 3 ’ \ Here notice of the Stage 3 decision was given on May 23,1972, but the demand for arbitration was not received until June 27, 1972. As the limitation of time arises from agreement of the parties rather than in consequence of statutory provision, there is posed an issue of procedural arbitrability for resolution by the arbitrator rather than a section 7503 threshold question for decision by the court (Long Is. Lbr. Co. [Martin], 15 N Y 2d 380). Although the arbitration clause of this collective bargaining agreement cannot be characterized as a “ broad ” clause, nonetheless, it contemplates arbitration as “to the interpretation and the application of the provisions of this agreement insofar as the same may be necessary for a determination of the grievance ”. Since the 10-day limitation of time is found in a provision of the agreement, it would seem that a decision as to its application would be procedurally necessary to a determination of the grievance here. (Long Is. Lbr. Co. [Martin], supra.)
The order of the Appellate Division should accordingly be affirmed.

 For purposes of our disposition of this appeal we do not reach or rest our determination on the issue of distinctness of parties on which the Appellate Division rested its conclusion. We recognize that retention of the same attorneys cannot he said generally to effect a merger of identity of clients. On the other hand, such retention in common in some circumstances may be a factor in concluding that the parties must be held to have an identity of interest for certain purposes (e.g., Watts v. Swiss Bank Corp., 27 N Y 2d 270).