■ In the Matter of the Arbitration between TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, Respondent, and DISTRICT COUNCIL 37 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, et al., Appellants.—In a proceeding to stay arbitration, the appeal is from an order of the Supreme Court, Kings County, dated June 4, 1976, which, *inter alia,* granted the application and stayed arbitration. Order reversed, on the law, with $50 costs and disbursements, application denied, and the parties are directed to proceed to arbitration forthwith. No fact questions were presented for review. The collective bargaining agreement between the appellant union and the public employer, entered into on March 15, 1973, covered the period from July 1, 1972 through June 30, 1975. The agreement provided that laborers, a class of employees covered by the collective bargaining unit, would be paid at the rates set by the City of New York and that "Employees shall work an eight-hour, five day week, including a one hour paid meal period per day." The agreement pertinently defined a grievance as a "dispute concerning the application or interpretation of this collective bargaining agreement". The grievance procedures consisted of four steps—the first before the immediate supervisor, the second before the engineer of maintenance, the third before the executive officer and chief engineer, or his representative, and the fourth final and binding arbitration before the American Arbitration Association. It appears that the laborers were paid on an hourly rather than on an annual basis and were the only employees to be paid for a 35-hour work week rather than a 40-hour week. In an informal written note, dated March 4, 1975 and addressed to the director of personnel, nine laborers requested an annual wage. It appears that on April 11, 1975 they requested an eight-hour day. On May 30, 1975 the director of personnel denied their request. On October 30, 1975, after the expiration of the contract, the union initiated the grievance procedures provided in the agreement. On February 10, 1976 those proceedings culmi-

nated in a demand for arbitration. It is not disputed that if the grievance procedures provided for in the agreement had been instituted prior to its expiration, the right of the union to arbitrate would survive. It is well settled that, with respect to both public and private employees, "questions of timeliness and compliance with step-by-step grievance procedures, prior to formal and final binding arbitration, are questions of 'procedural arbitrability' " which "must be left to the arbitrator" *(Matter of Long Is. Lbr. Co. [Martin]*, 15 NY2d 380, 386; *Matter of City School Dist. of City of Poughkeepsie [Poughkeepsie Public School Teachers Assn.]*, 35 NY2d 599, 607; *Belmont Cent. School Dist. v Belmont Teachers Assn.*, 51 AD2d 653). At bar, the discrepancy between the laborers' work week and that of the other employees was brought to the attention of the employer and was considered and rejected by the latter one month before the date of expiration of the agreement. "Arbitration is considered so preferable a means of settling labor disputes that it can be said that public policy impels its use" *(Matter of Associated Teachers of Huntington v Board of Educ.*, 33 NY2d 229, 236). In our opinion, the question whether the laborers' presentation to the director of personnel during the term of the contract satisfies the procedural requirements of the contract is a question either of procedural arbitrability or of a "dispute concerning the application or interpretation of this collective bargaining agreement"; in either case, it is a question for the arbitrators (see *Matter of Long Is. Lbr. Co. [Martin]*, 15 NY2d 380, 386, *supra).* Martuscello, Acting P. J., Cohalan, Rabin and Mollen, JJ., concur.