Kenneth J. CONTE and Laura Conte,
Plaintiffs–Appellants,

v.

Karen L. JUSTICE, Defendant–Appellee.

No. 1001, Docket 92–9009.

United States Court of Appeals,
Second Circuit.

Argued Feb. 25, 1993.

Decided June 23, 1993.

Alvin M. Feder, New York City (Feder, Kaszovitz, Isaacson, Weber & Skala, of counsel), for plaintiffs-appellants.

Jonathan Uejio, New York City (Conway, Farrell, Curtin & Kelly, P.C., of counsel), for defendant-appellee.

Before: LUMBARD, McLAUGHLIN, Circuit Judges, and DUFFY, District Judge.*

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs, Kenneth and Laura Conte, appeal from an order of the United States District Court for the Southern District of New York, Shirley Wohl Kram, *Judge,* granting summary judgment and dismissing

---

* Hon. Kevin Thomas Duffy, United States District Judge for the Southern District of New York, sitting by designation.

the complaint. The district court held that collateral estoppel barred the action because a prior state court action provided both plaintiffs with a full and fair opportunity to litigate the issue of liability.

## I. BACKGROUND

In the mid-afternoon of June 24, 1989, in Dutchess County, New York, an automobile owned by driver Kenneth Conte and carrying his wife Laura Conte, his infant son Christopher Conte, and his neighbors Randy and Ronna Weinberg, collided with Karen Justice's car, in which she travelled alone. This collision instigated four lawsuits. On October 9, 1989, the Weinbergs filed suit against both drivers in New York State Supreme Court, New York County (the "Weinberg Action"). On December 13, 1989, Karen Justice commenced an action against Kenneth Conte in New York State Supreme Court, Dutchess County (the "Justice Action"). Thereafter, plaintiffs brought the instant action against Karen Justice on July 16, 1990, and, four days later, on July 20, 1990, Christopher Conte, by his mother, Laura Conte, sued both his father, Kenneth Conte, and Karen Justice in New York State Supreme Court, Dutchess County (the "Infant Action").

Pursuant to a motion by Karen Justice, and over the objections of the Contes, the district court, on February 28, 1991, ordered a stay of the proceedings in the instant action pending the outcome of the related state court actions. Subsequently, the state court actions were consolidated for trial in New York State Supreme Court, Dutchess County (the "Consolidated State Court Action").[1] The trial was bifurcated and proceeded on the issue of liability. On September 26, 1991, the jury returned a verdict finding Kenneth Conte 100% negligent and, accordingly, exculpating Karen Justice. In the wake of the jury verdict, and before trial on the issue of damages, the three state court actions settled. Thereafter, a judgment incorporating the jury verdict was entered in both the

---

1. Prior to consolidation the Weinberg Action was transferred to Dutchess County.

Weinberg and Infant Actions. No judgment was ever entered in the Justice Action.

Following the entry of the aforementioned judgments, Karen Justice moved the district court in the case at bar for an order of summary judgment, or, alternatively, for leave to file an amended answer asserting collateral estoppel as a defense. On September 1, 1992, the district court granted summary judgment in favor of Karen Justice and, accordingly, dismissed the complaint in its entirety holding that the doctrine of collateral estoppel precluded the instant action. 802 F.Supp. 997. Specifically, the district court held that the insurance company's attorney did not impair Kenneth Conte's ability to fully litigate the Consolidated State Court Action. The district court further held that Laura Conte had a full and fair opportunity to litigate the issue of liability in the Consolidated State Court Action because she controlled the litigation as a representative of Christopher Conte. This appeal ensued.

## II. DISCUSSION

This appeal requires us to explore, once again, the parameters of the doctrine of collateral estoppel. Title 28 U.S.C. § 1738 requires federal courts to give the same preclusive effect to state court judgments as would be given by the courts of the judgment-rendering state. See Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so...."). Thus, as the determination now asserted to be preclusive derives from a New York State court judgment, New York's collateral estoppel rules apply.

 The doctrine of collateral estoppel prevents a party from relitigating an issue clearly raised in a prior action and decided against that party or those with whom they share privity. See Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 489 (1984). While premised on notions of due process and fairness, the doctrine also acts to conserve the resources of courts and litigants, reduce in-

consistent results, and promote the interest in finality of judgments. See Schwartz v. Public Adm'r of Bronx, 24 N.Y.2d 65, 74, 298 N.Y.S.2d 955, 962, 246 N.E.2d 725, 730 (1969); Gilberg v. Barbieri, 53 N.Y.2d 285, 291, 441 N.Y.S.2d 49, 50, 423 N.E.2d 807, 808 (1981); Murphy v. Gallagher, 761 F.2d 878, 882 (2d Cir.1985). It is due precisely to these concerns, however, that the rules surrounding the application of collateral estoppel cannot be reduced to some simple black letter formula. Indeed, the New York Court of Appeals has stated that rigid or mechanical application of the doctrine runs counter to principles of due process. See Schwartz, 24 N.Y.2d at 73, 298 N.Y.S.2d at 962, 246 N.E.2d at 730; Gilberg, 53 N.Y.2d at 292, 441 N.Y.S.2d at 51, 423 N.E.2d at 809.

 Under New York law, the determination of whether collateral estoppel precludes relitigation of an issue requires the court to pursue two general lines of inquiry. See Schwartz, 24 N.Y.2d at 71, 298 N.Y.S.2d at 960, 246 N.E.2d at 729; Gilberg, 53 N.Y.2d at 291, 441 N.Y.S.2d at 50, 423 N.E.2d at 809. See also Wilder v. Thomas, 854 F.2d 605, 617 (2d Cir.1988), cert. denied, 489 U.S. 1053, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989); Norris v. Grosvenor Mktg. Ltd., 803 F.2d 1281, 1285 (2d Cir.1986). Initially, the court must determine whether the issue sought to be litigated is identical to an issue necessarily decided in the prior action and decisive on the present action. Schwartz, 24 N.Y.2d at 71, 298 N.Y.S.2d at 960, 246 N.E.2d at 728. Upon satisfaction of the issue identity requirement, inquiry turns toward whether the party to be bound had a full and fair opportunity to contest the determination now said to control. Id.

### A. Issue Identity

 To the extent that collateral estoppel has a fixed-star, the requirement of issue identity between the prior and present action is immutable. See Wilder, 854 F.2d at 617. Satisfaction of this requirement in the instant case is accomplished with relative ease. After a trial on the issue of negligence in the Consolidated State Court Action, the jury assigned 100% of the liability to Kenneth

Conte. Thus, as liability for the same accident is the focal point of the instant litigation, the district court properly determined that the requisite identity of issues between the actions had been satisfied for collateral estoppel purposes.

## B. *Full and Fair Opportunity*

In *Blonder–Tongue Labs, Inc. v. University of Ill. Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the United States Supreme Court emphasized, within the context of the application of collateral estoppel, the necessity of giving every litigant a full and fair opportunity to have his or her day in court. Writing for the Court, Justice White stated:

> [s]ome litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.

*Id.* at 329, 91 S.Ct. at 1443. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."). In the instant case, therefore, we must determine whether Kenneth and Laura Conte were each afforded a full and fair opportunity to contest the decision now said to control.

■ Under New York law, an inquiry into whether a party had a full and fair opportunity to litigate a prior determination must concentrate on "the various elements which make up the realities of litigation." *Schwartz*, 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729; *see also Gilberg*, 53 N.Y.2d at 292, 441 N.Y.S.2d at 51, 423 N.E.2d at 809. Factors listed by the New York Court of Appeals to assist in this inquiry include the forum for the prior litigation, the competence and experience of counsel, the foreseeability of future litigation, and the context and circumstances surrounding the prior litigation that may have deterred the party from fully litigating the matter. *See Schwartz*, 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729–30; *Gilberg*, 53 N.Y.2d at 292, 441 N.Y.S.2d at 51, 423 N.E.2d at 809; *Ryan*, 62 N.Y.2d at 501, 478 N.Y.S.2d at 827, 467 N.E.2d at 491.

### 1. *Kenneth Conte*

Kenneth Conte argues that the district court erred when it held that he was adequately represented by his insurance company's attorney. Specifically, Mr. Conte argues that the failure of the insurance company's attorney to oppose the entry of a judgment against him in the Weinberg and Infant Actions demonstrated that the attorney had only the insurance company's best interests in mind. Under New York law, however, the district court properly held that the insurance company's attorney adequately represented Mr. Conte. *See Schwartz*, 24 N.Y.2d at 73–74, 298 N.Y.S.2d at 962, 246 N.E.2d at 725.

In *Schwartz*, the New York Court of Appeals discussed circumstances where an insurance company's attorney could possibly provide inadequate representation for a defendant. *Id.* Conceivably, an insurance carrier could approach litigation with an eye towards securing a partner with which to share recovery costs. *Id.* Additionally, the lack of incentive to diligently litigate a matter could arise where the injuries involved and the amount at stake are minor. *Id.*

As the district court pointed out, these circumstances do not apply to the instant action. First, no evidence exists to suggest that Kenneth Conte's lawyer approached the litigation seeking a partner to help reduce any loss. Second, the injuries involved and the amount at stake were by no means trivial, thereby providing the insurance company with pressing incentive to vigorously litigate the issue of liability.

Furthermore, even if New York considered an insurance company's failure to prevent the entry of a judgment against a culpable defendant a circumstance warranting a finding of inadequate representation, Kenneth Conte offered no evidence to suggest that the insurance company's lawyer could have avoided

the entry of the judgment in the Weinberg and Infant Actions. Nevertheless, such is not a consideration under New York law, and we do not now hold it to be so. Accordingly, it must be concluded that Kenneth Conte had a full and fair opportunity to litigate the issue of liability and thus will be precluded from doing so again. Kenneth Conte's assertion of inadequate representation by the insurance company due to their failure to prevent the entry of a final judgment is inadequate to even fairly raise the issue of appropriate representation.

2. *Laura Conte*

Laura Conte contends that because she did not participate as a party in the Consolidated State Court Action she did not have a full and fair opportunity to litigate the issue of liability. On the other hand, the defendant argues that although Laura Conte was not a party to the prior litigation, she was in privity with Christopher Conte, and is therefore now collaterally estopped. The district court agreed with Karen Justice, holding that because Laura Conte appeared in a representative capacity on behalf of Christopher Conte, she had every incentive to fully litigate his claim, thereby controlling the lawsuit, and, accordingly, became bound by the determination as his privy. In this determination, we disagree with the district court, and now reverse.

■ Collateral estoppel binds not only the actual parties to a lawsuit, but also their privies. *See Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315, 320, 265 N.E.2d 739, 743 (1970). Among other things, privity has been held to include those who, although not actual parties, exercise practical control over an action. *Id.* Due in large part to the general nature of litigation, however, no single factor is determinative upon the issue of control; rather courts look to the totality of the circumstances in determining the issue of control. *Id.*

In *Watts,* the seminal New York case on the issue of control, a couple, domiciled in France, opened a joint bank account at the New York City office of a Swiss Bank. After the death of the husband, the wife sought the balance of the funds. Before the bank could comply, however, the husband's daughter from a previous marriage commenced an action in France against the wife for the proceeds of the account. Subsequently, the wife instituted an action in New York against the bank to compel a turnover of the funds. Shortly thereafter, the wife died. The wife's three sisters were substituted as defendants in the French action, and her executors, the husbands of two of her sisters, continued to prosecute the New York action. The French action proceeded to judgment in favor of the daughter, and, thereafter, the executors prevailed in the New York action. Thus, two contradictory judgments existed as to the identical property.

On appeal, the New York Court of Appeals held that *res judicata* effect should have been accorded the prior determination in the French court. *Id.* at 278, 317 N.Y.S.2d at 321, 265 N.E.2d at 744. Central to this holding was a determination that one of the executors, Watts, controlled the French action on behalf of the substituted sisters, and thereby came into privity with them. *Id.* The court based this determination primarily upon the fact that Watts acted not only as the executor in the one action, but served in the other action as the liaison between the sisters and the one law firm, which, significantly, represented both the sisters in the French action and the executors in the New York action. *Id.* at 277–278, 317 N.Y.S.2d at 321, 265 N.E.2d at 744. Additionally, the fact that the same property was at issue in both matters further supported the conclusion as to control. *Id.* at 278, 317 N.Y.S.2d at 321–22, 265 N.E.2d at 744.

■ As noted above, the totality of the circumstances approach to the control theory of privity adopted in *Watts* has prevented courts from fixating on one general rule of application. Nevertheless, several factors indicative of control have emerged. Clearly, the appearance of the same attorney in both actions creates the impression that the interests represented are identical. *Id.* ("[i]t is of singular significance that the two actions were prosecuted simultaneously by the same law firm"); *see Ruiz v. Commissioner of the Dep't of Transp.*, 858 F.2d 898, 903 (2d Cir. 1988) (citing *Watts* ); *In re Arbitration be-*

tween City School Dist. of Poughkeepsie, 35 N.Y.2d 599, 606 n. *, 364 N.Y.S.2d 492, 496 n. *, 324 N.E.2d 144, 147 n. * (1974) (retention of the same attorney "in some circumstances may be a factor in concluding that the parties must be held to have an identity of interest for certain purposes"). *But see Green v. Santa Fe Indus. Inc.*, 70 N.Y.2d 244, 254, 519 N.Y.S.2d 793, 797, 514 N.E.2d 105, 109 (1987) (although same attorney no privity existed); *Weiner v. Greyhound Bus Lines, Inc.*, 55 A.D.2d 189, 193, 389 N.Y.S.2d 884, 888 (2d Dep't 1976).

■ In the instant case the present counsel for Laura Conte and the state court counsel for Christopher Conte are not the same. Thus, just as mutuality of attorneys bolsters a finding of control, the lack thereof dissuades us from such a finding.

■ A second factor that must be considered is whether the claims of the party to be bound relate directly to the identical property interest at issue in the prior action. In general the term privity "denote[s] a mutually successive relationship of the same rights to the same property." *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 486, 414 N.Y.S.2d 308, 312, 386 N.E.2d 1328, 1332 (1979) (citation omitted). Accordingly, a finding of privity through control is strained where, although the theories of recovery in the prior and present actions are the same, the claims are discrete as to each plaintiff because they did not involve the identical property. *See Green*, 70 N.Y.2d at 254, 519 N.Y.S.2d at 797, 514 N.E.2d at 109. In the instant case, the property interest at stake relates directly to Laura Conte's personal injuries, while the property interest claimed in the prior action belonged exclusively to Christopher Conte. As such, there is less to support a finding of control.

■ When combined with other factors, privity may also exist if there is an indication that the prior action was "managed as [the party to be bound] thought it should be." *Watts*, 27 N.Y.2d at 278, 317 N.Y.S.2d at 321, 265 N.E.2d at 744; *see Green*, 70 N.Y.2d at 254, 519 N.Y.S.2d at 797, 514 N.E.2d at 109; *Ruiz*, 858 F.2d at 903. Such an indication is absent from the instant matter.

The district court found control based solely on Laura Conte's incentive to fully litigate Christopher Conte's claim. The incentive of a guardian to recover for an infant, however, is obviously ever-present in such actions. Thus, if incentive were the sole yardstick of control, mere appearance in a lawsuit as the guardian of an infant would always automatically prevent the guardian from pursuing individual claims that may arise from the same transaction.

■ We believe that, when added to the persuasive weight of other authorities, the logical extension of existing New York law supports the proposition that participation as a guardian does not, without more, preclude a persons right to bring a subsequent personal cause of action. *See Weiner*, 55 A.D.2d at 193, 389 N.Y.S.2d at 887 (participation in different fiduciary capacity in subsequent suit arising out of same incident not preclusive). *See also* 18 Charles A. Wright, *et al., Federal Practice and Procedure* § 4454, at 465 (1981) ("litigation in one capacity, individual or representative, does not preclude relitigation in a different capacity, individual or representative"); 1B James Wm. Moore, *et al., Moore's Federal Practice* ¶ 0.411[11] (1993); Restatement (Second) of Judgments §§ 36(2), 39 comment e (1982). A guardian is, essentially, only a formal party to a proceeding and "is by definition excluded from the effects of judicial finality, because he is a party for reasons of procedural, rather than substantive, law." 1B Moore *et al., supra,* ¶ 0.411[6], at III–246. Thus, the district court erred in finding control on the basis of incentive alone.

Concededly, allowing an individual appearing as a guardian to escape preclusion when bringing suits in his or her individual capacity essentially requires courts to dispose of concerns regarding the possibility that the party is seeking to maximize opportunities for recovery. *See* 18 Wright *et al., supra,* § 4454, at 466. The instant case, however, raises no such questions. Laura Contes's individual action was filed four days prior to the Infant Action. If Laura Conte intended two bites at the proverbial apple she certainly would have waited to file her lawsuit until the conclusion of Infant Action, for, had the

district court denied the motion to stay the instant action, which she opposed, the possibility could arise that the adjudication thereof would have occurred prior to, or simultaneously with, the Infant Action, thereby inuring no benefit to Laura.

In the circumstances of this case, appearance in the capacity of a guardian, does not, in and of itself, preclude the guardian from pursuing a claim in an individual capacity. This is not to say, however, that circumstances may not arise where a guardian can control a lawsuit. Nevertheless, based on the circumstances as presented herein, we hold that Laura Conte has yet to have her day in court, and should therefore not be collaterally estopped from pursuing this case.

Accordingly, the decision of the district court as to Kenneth Conte is affirmed and that as to Laura Conte is reversed and remanded.