Carrie MEEK, et al., Plaintiffs,

v.

METROPOLITAN DADE COUNTY, FLORIDA, et al., Defendants.

No. 86–1820–CIV.

United States District Court, S.D. Florida.

May 26, 1992.

Thomasina H. Williams, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, Fla., for plaintiffs Packington, Meek Burke and Intervenor Ferguson.

Steven M. Cody, Miami, Fla., for plaintiffs.

Robert A. Duvall, Dade County Attorney's Office, Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

THIS CAUSE is before the Court upon Plaintiffs' various motions seeking summary judgment relief.

The Court having considered the motions, responses, replies, the pertinent portions of the record, and having heard oral argument of counsel in this action, hereby DENIES final summary judgment specifically as to the third prong in *Thornburg v.*

*Gingles,* 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986).

Upon review of the record and history of this case, however, the Court finds that there are no genuine issues of material fact as to prongs one and two of the *Gingles* test for both Hispanic and Black Plaintiffs.[1] Accordingly, partial summary judgment, which is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case, is GRANTED for Hispanic and Black Plaintiffs as to prongs one and two of the *Gingles* test.

## I. BACKGROUND

In 1986, Black and Hispanic citizens and registered voters of Dade County, Florida[2] brought suit against the County claiming that the structure for electing the Board of County Commissioners violated section two of the Voting Rights Act by diluting Black and Hispanic voting power.[3]

On October 5, 1988, Judge Kenneth L. Ryskamp of this Court, on cross-motions for summary judgment, ruled in favor of Dade County because Black and Hispanic Plaintiffs had not satisfied the third factor in *Gingles*. The Court held that Plaintiffs failed to show the existence of a Non–Hispanic White majority that usually defeated the election of the minority's preferred candidate. As to Hispanic Plaintiffs, the Court reasoned that since the Non–Hispanic Whites did not constitute a

---

1. Hereafter referred to as "Plaintiffs" or "Hispanic Plaintiffs" or "Black Plaintiffs".

2. Hereafter referred to as "Dade" or "the County".

3. Section 2 of the Voting Rights Act, as amended in 1982 provides:

 (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided by subsection (b) of this section.

 (b) A violation of subsection (a) of this section is established if, based on the totality of the circumstances, it is shown that the politi-

cal processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered:

*Provided,* That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in population.

42 U.S.C. § 1973 (1982).

majority of the total population, the Non–Latin White voting bloc did not cause the defeat of Hispanic candidates. The District Court concluded instead that the defeat of the Hispanic candidates resulted from their failure to register and vote because Hispanics could constitute "the largest segment of registered voters with an effective registration drive." District Court Order of November 6, 1988 at 10.[4]

The District Court, however, held that both Black and Hispanic Plaintiffs satisfied the first two prongs enunciated in *Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986): 1) that Plaintiffs prove that they are sufficiently large and geographically compact minority groups to constitute a majority in a single-member district,[5] and 2) that the Plaintiffs are politically cohesive.[6]

On appeal to the Eleventh Circuit Court of Appeals, the Eleventh Circuit reversed and remanded the case to this Court. *Meek v. Metropolitan Dade County*, 908 F.2d 1540 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1108, 113 L.Ed.2d 217 (1991). The Eleventh Circuit held that the District Court erroneously applied the third factor in *Gingles*. The Eleventh Circuit opined that although the Non–Hispanic White voting bloc did not constitute a majority, when paired with politically cohesive Blacks, who tend to vote against Hispanic

candidates, a majority is formed which usually denies the Hispanics the opportunity to elect their preferred candidate. *Meek*, 908 F.2d at 1546–47. The Eleventh Circuit noted the District Court's lack of evidence of the voting age Hispanic population to support its conclusion. *Id.*

Upon remand, all parties filed cross-motions for summary judgment before Judge James Lawrence King of this Court. Judge King denied the motions because there were genuine issues of material fact as to whether Plaintiffs could satisfy the third prong of the three-pronged test set forth in *Gingles*. As to Black Plaintiffs, Judge King held that due to unresolved conflicting factual issues involving the ability of Blacks to elect their preferred representatives, the Court could not enter summary judgment for any party as a matter of law. *See* Order Denying Plaintiffs' Motions for Final Summary Judgment ("Order"), July 30, 1991 769 F.Supp. 1220, 1222.

With respect to Hispanic Plaintiffs, Judge King found that there was a genuine issue of material fact regarding the third factor in *Gingles* as to whether the "Hispanics are indeed an electoral minority that can be blocked from electing their preferred representatives." *See* Order, July 30, 1991 769 F.Supp. at 1221. Judge King reasoned that although recent census data

---

**4.** The November 6, 1988 order was a denial of Plaintiffs' Motion to Alter Summary Final Judgment entered for the Defendants on October 5, 1988.

**5.** In the October 5, 1988 order, Judge Ryskamp noted that "[t]he defendants do not dispute the Black Plaintiffs' ability to meet this first *Thornburg* precondition." *Id.* at 16. As to the Hispanic Plaintiffs, the District Court held that "this court is convinced that the approximately 811,000 Hispanics in Dade County ... meet *Thornburg*'s first precondition." *Id.* at 17. · In the November 6, 1988 order, the District Court again stated that it found that "both Blacks and Hispanics satisfy the first prong of the *Thornburg* test." District Court opinion of November 6, 1988 at 2.

Moreover, Judge King's order dated July 30, 1991 769 F.Supp. 1220 (S.D.Fla.1991), also implies that the first prong of the *Gingles* test has been satisfied. Judge King's analysis of the Hispanic Plaintiffs, motion began by stating that "[t]he factual issue in question involves whether

Hispanics are indeed an electoral minority that can be blocked from electing their preferred representatives." Order of July 30, 1991 at 1221. In concluding, Judge King again stated that "it is the conclusion of this court that genuine issues of material fact remain as to the third prong of the *Gingles* test." *Id.* at 1222–23. Thus, this Court finds that although Judge King didn't expressly address the first two prongs of the *Gingles* test, the July 30, 1991 order implies that those issues are resolved.

**6.** Judge Ryskamp's original order of October 5, 1988 held that Hispanics were not politically cohesive. *Id.* at 17. Upon re-examination of the statistical evidence, however, the Court in its November 6, 1988 order found that "[t]he use of homogeneous precinct analysis and bivariate regression analysis in this case has convinced this court of the political cohesiveness of both Blacks and Hispanics. The plaintiffs have sufficiently shown that a significant number of minority group members usually vote for the same candidates." *Id.* at 3.

shows Hispanics constituting 50.5% of the voting age population in Dade County, the inclusion of many immigrants and refugees into this category decreases the number of Hispanics eligible to register to vote. *Id.*

The basis for the genuine issue held to be of material fact by Judge King was the Eleventh Circuit's opinion which stated that there was no evidence of the "relative numbers of voting age persons in the various voting blocs" to support Judge Ryskamp's decision. *Meek,* 908 F.2d at 1546. Judge King explained that the Eleventh Circuit's concern, coupled with the composition of Dade County's Hispanic population, suggest that "the ages of Hispanics cannot be the sole determinative factor in measuring voting strength in Dade County"; rather, it is *"available* voting strength that should be evaluated." (Emphasis in original). *See* Order, July 30, 1991 769 F.Supp. at 1221, & 1222.

> The Court concluded as follows:
>
> Where Hispanics have become a bare majority of the voting age population—achieving the majority status by just 0.5%—there remains a material issue of fact as to whether the number of Hispanics who cannot yet register to vote will cause this Hispanic "majority" to be "politically submerged" as a minority of those who are either enfranchised or capable of becoming enfranchised. This is illustrated by the reality that Dade County Hispanics who have moved to the United States within the last five years, even if they are of voting age, cannot normally have obtained the right to vote. *See, e.g.,* 8 U.S.C. § 1427(a) (imposing a five year residence period before persons can be naturalized). Given this factual issue as to Hispanic voting strength, this court finds that summary judgment cannot be entered for any party as a matter of law.

*Id.* at 1222.

Following the denial of Plaintiffs and Defendants' cross-motions for final summary judgment, Plaintiffs brought an action in Florida State Court before Judge Murray Goldman on August 21, 1991 to release the results of a survey of Hispanic citizenship that University of Miami Professor Ira Sheskin conducted for the County Attorney's office. On August 23, 1991, Judge Goldman held that the results of the survey were public records in accordance with Florida Statute § 119.01.

On the same day, the County filed a motion for protective order in this Court requesting an order precluding any attempt by the Plaintiffs to use page 4 of the Sheskin survey report in these proceedings. The County, however, withdrew its motion for protective order after reaching an agreement with Plaintiffs regarding the admissibility and accuracy of the results of the Sheskin survey and a reasonable distribution of the costs for such survey.

Based on the results of the Sheskin survey and other statistical calculations, Hispanic Plaintiffs filed their Renewed Motion for Final Summary Judgment on August 28, 1991; they claimed that the survey resolves the one remaining genuine issue of material fact and demonstrates that Hispanics constitute a minority of those who are enfranchised in Dade County, Florida.

## II. SUMMARY JUDGMENT STANDARD

As a preliminary matter, a district court may grant summary judgment if the moving party shows that there is no genuine issue as to any material fact,[7] and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Real Estate Financing v. Resolution Trust Corp.,* 950 F.2d 1540, 1543 (11th Cir.1992). The moving party bears the burden of demonstrating that there exists no genuine dispute as to any material factual issues. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

---

**7.** As to materiality, the substantive law will identify which facts are material. Only disputed facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Moreover, in assessing the motions for summary judgment, the Court must review the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motions. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1527–28 (11th Cir.1987).

■ The non-moving party's burden, however, is not lessened by the movant's initial burden. Accordingly, once the movant has demonstrated that an essential element of the non-moving party's case is lacking, the non-moving party must offer proof sufficient to establish the existence of the essential element or else the district court will be required to grant the movant's motion for summary judgment. *Id.* at 1528; *Real Estate Financing,* 950 F.2d at 1543 citing *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.[8]

■ If the party moving for summary judgment relief does not meet its burden, the court can still enter an order granting partial summary judgment on the material facts which have no substantial controversy. Fed.R.Civ.P. 56(d).[9] Partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. *Lovejoy Electronics, Inc. v. O'Berto,* 616 F.Supp. 1464, 1473 (N.D.Ill.1985) citing 6 J. Moore & J. Wicker, *Moore's Federal Practice* § 56.20 (2d ed. 1948). This adjudication accelerates litigation by framing and narrowing the triable issues, and by eliminating, before trial, matters that contain no genuine issue of material fact. *See Lovejoy,* 616 F.Supp. at 1473.

## III. GOVERNING LAW

■ In order to prevail on a vote dilution claim in this Circuit, a plaintiff must establish the three core *Gingles* factors:

First, the minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district. If it is not, as would be the case in a substantially integrated district, the *multi-member form* of the district cannot be responsible for minority voters' inability to elect its candidates. Second, the minority group must be able to show that it is politically cohesive. If the minority group is not politically cohesive, it cannot be said that the selection of a multimember electoral structure thwarts distinctive minority group interests. Third, the minority must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred candidate. In establishing this last circumstance, the minority group demonstrates that submergence in a white multimember district impedes its ability to elect its chosen representatives.

*Meek,* 908 F.2d at 1542 citing *Gingles,* 106 S.Ct. at 2766–67.

■ This Court must apply the applicable law mandated by its reviewing Court of Appeals, which is binding on all subsequent proceedings in the same case. *See Williams v. City of Dothan,* 818 F.2d 755, 758, *modified,* 828 F.2d 13 (11th Cir.1987). This Court, however, is also cognizant of the Eleventh Circuit's conflicting interpre-

8. The purpose of Rule 56 is to allow for the prompt disposition of a case when there is no genuine issue as to any material fact. *See* Advisory Committee Notes to Rule 56. As stated in the Advisory Notes: "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

9. Rule 56(d) provides:
 (d) **Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

tations of *Gingles,* section 2 of the Voting Rights Act, 42 U.S.C. § 1973 (1982), and on the legal effect of proving the above-listed factors. In *Solomon v. Liberty County, Fla.,* 899 F.2d 1012, 1013 (11th Cir.1990) (en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 670, 112 L.Ed.2d 663 (1991), the Eleventh Circuit stated that the Court is divided on the legal effect of satisfying the three *Gingles* factors. The Court did not specifically direct the district court on how to proceed on remand, but instead, instructed the district court to proceed in accordance with *Gingles,* while considering the two views of the Eleventh Circuit (i.e., Chief Judge Tjoflat's and Judge Kravitch's specially concurring opinions). The Eleventh Circuit in *Hall v. Holder,* 955 F.2d 1563, 1568 n. 9 (11th Cir.1992), also noted its division "on the issues of whether plaintiffs can make out a § 2 violation simply by establishing the *Gingles* factors and whether defendants can raise a defense under the totality of the circumstances after the plaintiffs have satisfied the *Gingles* preconditions." Furthermore, even Judge Kravitch in *Meek* did not find it unacceptable to make a totality of the circumstances analysis under Judge Tjoflat's approach after the plaintiffs have satisfied the three *Gingles* preconditions. Judge Kravitch opined as follows:

> If the district court found the plaintiffs to have satisfied the three *Gingles* fac-

tors, it appears on the facts of this case, where the district court has found the existence of racial hostility between Blacks and Hispanics driving electoral results, that under either view of the *Solomon* en banc court, the plaintiffs might be entitled to relief. Given the posture of this case, we decline to assume the existence of facts in order to apply the law hypothetically. Further, the Supreme Court has made clear that the district court should analyze the facts in the first instance. We therefore decline to reach issues not necessary to the decision of this case.

*Id.* at 1549.

■ Accordingly, this Court gives due consideration to the views expressed in Chief Judge Tjoflat's and Judge Kravitch's specially concurring opinions in *Solomon,* 899 F.2d 1012. In order to pass the summary judgment threshold, a minority group must satisfy the three *Gingles* factors. Upon satisfaction of these criteria, this Court may then conduct a "totality of the circumstances" analysis and consider other relevant factors referred to as the "Senate Report" or "Zimmer" factors.[10] In this case, however, the analysis ceases after consideration of the first three prongs of the *Gingles* test because there is a genuine issue of material fact as to the third prong, which can only be resolved at trial.[11]

**10.** One of the first cases to state the factors was *Zimmer v. Mckeithen,* 485 F.2d 1297, 1305–07 (5th Cir.1973) (en banc), *aff'd on other grounds sub nom., East Carroll Parish School Board v. Marshall,* 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976) (per curiam); *see also White v. Regester,* 412 U.S. 755, 766–67, 93 S.Ct. 2332, 2339–40, 37 L.Ed.2d 314 (1973).

**11.** Assuming the plaintiffs satisfy the third *Gingles* prong at trial, then this Court will be free to consider the "Senate" or "Zimmer" factors set out in the legislative history of § 2 of the Voting Rights Act. The Senate factors provide courts with additional guidance in determining a vote dilution claim. The following is a list of the Senate factors:

> 1) The extent of any history of official discrimination in the state or political subdivision that touches the right of the members of the minority group to register, to vote or otherwise to participate in the democratic process;

> 2) The extent to which voting in the elections of the state or political subdivision is racially polarized;
> 3) The extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;
> 4) If there is a candidate slating process, whether the members of the minority group have been denied access to that process;
> 5) The extent to which members of the minority group in the state or political subdivision bear the effects of past discrimination which hinders their ability to participate effectively in the political process;
> 6) Whether political campaigns have been characterized by overt or subtle racial appeals;
> 7) The extent to which members of the minority group have been elected to public office in the jurisdiction.

## IV. ANALYSIS

As stated above, once Plaintiffs establish the three core *Gingles* factors, this Court may conduct a totality of the circumstances analysis.

 As to prongs one and two of the *Gingles* test, the Court has determined that both Black and Hispanic Plaintiffs have satisfied their respective burdens. On appeal, the Eleventh Circuit affirmed the District Court's conclusion that Plaintiffs satisfied their burden as to the first *Gingles* prong, and it also held that the second *Gingles* prong was not in dispute. *Meek v. Dade County*, 908 F.2d 1540, 1549 (11th Cir.1990). Consequently, this Court may not reconsider these issues. *See Williams*, 818 F.2d at 758.[12]

 As to the third *Gingles* prong, however, the Eleventh Circuit concluded that the District Court's determination was based upon an erroneous application of the law. Therefore, the Eleventh Circuit now instructs this Court to reconsider the third *Gingles* prong and determine whether "Hispanics [13] have thus far usually elected preferred representatives". *Meek*, 908 F.2d at 1549. The court should also consider "whether ... Hispanics are impaired in their ability to elect representatives of their choice by the manner in which the voting districts are now drawn." *Id.*

In determining whether Hispanic Plaintiffs can satisfy the third *Gingles* prong, the Court must assess whether "Hispanics are indeed an electoral minority that can be blocked from electing their preferred representatives." 769 F.Supp. at 1221. The Court must resolve not whether Hispanics

---

Senate Judiciary Committee Report, at 28–29, U.S.Code Cong. & Admin.News 1982, 177, 206–207; *Gingles*, 478 U.S. at 37, 106 S.Ct. at 2759.

The Court can also consider the following additional factors:

 a) Whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group.

 b) Whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous.

Senate Report, at 28–29, U.S.Code Cong. & Admin.News 1982, pp. 177, 206–207; *Gingles*, 478 U.S. at 37, 106 S.Ct. at 2759.

These factors are to be considered within the totality of the circumstances; they are neither comprehensive nor exclusive. There is no requirement that any particular number of factors be proven. *Gingles*, 478 U.S. at 45, 106 S.Ct. at 2763. Instead, the determination depends upon "a searching practical evaluation of the 'past and present reality' ... and on a functional view of the political process." *Id.* at 45, 106 S.Ct. at 2764.

**12.** A court may reconsider issues previously decided by a court of appeals if one of three exceptions is present: " '(1) substantially different evidence is produced at a subsequent trial; (2) controlling authority compels a contrary decision of law applicable to the issue; or (3) the prior decision was clearly erroneous and would work manifest injustice.' " *Williams v. City of Dothan*, 818 F.2d 755, 758 citing *Dorsey v. Continental Cas. Co.*, 730 F.2d 675, 678 n. 2 (11th Cir.1984). The Court finds that no exception exists in the case *sub judice*, and, therefore, the Court is not required to reconsider the first two *Gingles* factors.

Although not required, this Court conducted an independent review of all the relevant pleadings addressing prongs one and two of *Gingles* and concurs with the previous findings by the District Court and Court of Appeals that Black and Hispanic Plaintiffs have satisfied prongs one and two of the *Gingles* test. As to prong one of *Gingles*, this Court reviewed the deposition of Charles W. Blowers, Chief of the Research Division of the Metro–Dade Planning Department, which supports the assertion that both Black and Hispanic Plaintiffs reside in geographically compact areas in Dade County. The deposition also reveals that census tracts which contained 90% of the Blacks in Dade County contained only 10% of Non Latin Whites. Similarly, census tracts evidencing 90% of the Hispanics in Dade County contain less than 50% Non Latin Whites. Moreover, County Commission District 2 is made up of 62.8% Hispanic voters, and County Commission District 3 has a Black plurality of the total population. *See* Revised Pre–Trial Stipulation at 20.

As to the second prong in *Gingles*, this Court reviewed the affidavit of Genie Stowers, Professor of Political Science and Public Affairs at the University of Alabama at Birmingham. Professor Stowers' conclusion that Black and Hispanic Plaintiffs are politically cohesive stems from the homogenous precinct and bivariate regression analyses of county elections held between 1976 and 1986, which showed strong support between Black voters and candidates of the same group, and between Hispanics and candidates of their group. *See* Affidavit of Genie Stowers at 3 (Feb. 11, 1988).

**13.** This Court addresses the Eleventh Circuit's instructions only as to Hispanic Plaintiffs.

are a majority of the population of Dade County, but rather, what percentage of Dade County's voting age population consists of voting age Hispanics eligible to vote. This endeavor requires an analysis of citizenship data for Dade County's population.

In addressing the foregoing issues, the Court has relied upon and considered the pertinent pleadings, exhibits and stipulations on file, including a copy of the results of the survey of Hispanic citizenship that University of Miami Professor Ira Sheskin conducted for the County Attorney's office.

The most recent 1990 Census data indicates that Dade County had a voting age population of 1,469,084 and that voting age Hispanics comprised 741,846 of the population, constituting forming 50.5% of the voting age population. The 1990 Census data, however, has not yet produced any information on citizenship in Dade County.[14]

Hispanics rely on mathematical equations using figures obtained from the Sheskin survey to support their contention that Hispanics are a minority in Dade County. The results of the survey demonstrate that 61.1% of voting age Hispanics in Dade County are citizens, and 38.9% are not citizens and, therefore, ineligible to vote. Hispanic Plaintiffs' calculations consist of multiplying the number of voting age Hispanics by the citizenship level ascertained by the County, which concludes that 453,268 voting age Hispanics are eligible to vote[15]. Conversely, the remaining 288,578 are ineligible to vote.[16]

The computation then excludes the ineligible, voting age Hispanics from the County's total voting age population and concludes that the number of eligible voters in Dade County is 1,180,506.[17] The Hispanic

Plaintiffs then claim that dividing the number of eligible, voting age Hispanics by the total voting age population in Dade County makes eligible, voting age Hispanics 38.-40% of the County's total voting age population.[18]

If this Court were able to compare apples and oranges, then the above results would reveal that eligible, voting age Hispanics are a minority in Dade County. Due to Dade County's diverse cultural makeup, however, any numerical computation to determine voting status of a population must also examine the citizenship classification of populations of different races.

Hispanic Plaintiffs' computations exclude ineligible, voting age Hispanics (288,578) from the County's total voting age population (1,469,084), but they do not exclude non-citizen Blacks and non-citizen, non-Hispanic Whites. For example, the Haitian population in Dade County, like the Hispanic population, is primarily an immigrant population and may well have a large non-citizen element. The exclusion of other voting age, non-citizens from the Hispanic Plaintiffs' calculations precludes this Court from ascertaining an accurate numerical measure of the County's total eligible voters. Therefore, because a genuine issue of material fact exists as to prong three of the *Gingles* test, this Court holds that Hispanic Plaintiffs fail to satisfy the preconditions necessary for this Court to make a totality of the circumstances analysis.

## VI. CONCLUSION

Based on the foregoing, the Court finds that Hispanic Plaintiffs have not met their burden of demonstrating that there exists no genuine issues of material facts on the *Gingles* third prong. Accordingly, Hispan-

---

**14.** The parties have informed the Court that they have received notice from the Bureau of the Census that information on the citizenship status of persons in Dade County, identified by race and ethnicity, will not be available until 1993.

**15.** 741,846 voting age Hispanics multiplied by 61.1% citizenship level = 453,268 Hispanics eligible to vote.

**16.** 741,846 voting age Hispanics minus 453,268 Hispanics eligible to vote = 288,578 Hispanics not eligible to vote.

**17.** Dade County's total voting age population of 1,469,084 minus 288,578 Hispanics not eligible to vote = 1,180,506.

**18.** 453,268 Hispanic eligible voters divided by 1,180,506 total eligible voters = percentage of Hispanic eligible voters among all eligible voters.

ic Plaintiffs' motion for final summary judgment is DENIED.

It is further ORDERED AND ADJUDGED that partial summary judgment as to the first two prongs of the *Gingles* test is GRANTED as to both Black and Hispanic Plaintiffs.

DONE AND ORDERED.