## REPUBLIC WESTERN INSURANCE COMPANY, Plaintiff,

v.

## NOBEL INSURANCE COMPANY, Defendant.

## NOBEL INSURANCE COMPANY, Third–Party Plaintiff,

v.

## RCR BUILDERS, INC., Venus Deliganis, Demetrios Xanthakos and Vasilios Xanthakos, Third–Party Defendants.

No. 97 Civ. 5501(JSR).

United States District Court, S.D. New York.

May 1, 1998.

Ralph Pernick, Rockville Centre, NY, for plaintiff.

Chris Georgoulis, New York, NY, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Without the parol evidence rule, the stream of commerce would be constantly dammed—as this case well illustrates.

Plaintiff brings this action for breach of contract to recover defendant's contribution allegedly owed under a co-surety agreement. On February 13, 1998, upon close of discovery, plaintiff and defendant filed cross-motions for summary judgment. For the reasons stated below, plaintiff's motion is granted and defendant's motion denied.

The pertinent facts, either undisputed or taken most favorably to defendant, are as follows. On or about August 27, 1993, plaintiff Republic Western Insurance Company and defendant Nobel Insurance Company co-signed a two-page "CO–SURETY AGREEMENT" insuring payment of a $3,205,000 bond that guaranteed the performance of RCR Builders, Inc. ("RCR") on a construction project for the Triborough Bridge and Tunnel Authority ("TBTA"). The Co–Surety Agreement specified that Nobel's portion of the insurance liability was capped at $330,000, and, more particularly, was limited on any claim to the proportion that $330,000 bore to the $3,205,000 total exposure on the bond, *i.e.*, 10.3%. RCR subsequently defaulted, as a result of which Republic incurred expenses of $1,082,678.88 in bringing the project to completion. Accordingly, in the instant action, Republic seeks $111,515.91 (plus interest) from Nobel, representing Nobel's 10.3% obligation as co-surety.

▮ Nobel, however, contends that the Co–Surety Agreement can not be read in isolation but rather must be read together with two contemporaneous letters (one from Republic's agent to Nobel and the other from Nobel to a third party) that, according to Nobel, show that Nobel "really" only agreed to serve as surety for Hudson Iron Works, one of the subcontractors on the project, which completed its part of the work without default. But the Co–Surety Agreement is plain and unambiguous on its face, and nowhere mentions Hudson Iron Works or any other insured except RCR. Thus, Nobel's argument is barred by the settled principle of New York law (here applicable) that extrinsic evidence, whether oral or written, is not admissible to vary or contradict the terms of an integrated written contract clear on its face. *Farm Stores, Inc. v. School Feeding Corp.*, 79 A.D.2d 504, 433 N.Y.S.2d 453, 455 (1980), *aff'd* 53 N.Y.2d 910, 440 N.Y.S.2d 633, 423 N.E.2d 56 (1981).[1]

Trying to evade this rule, Nobel cites authority that "instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together." *Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228, 233 (2d Cir.1991). *See also Commander Oil Corp. v. Advance Food Service Equipment*, 991 F.2d 49 (2d Cir.1993). But in *Carvel* and *Commander Oil* the parties' intent was demonstrated by co-signed writings exhibiting a high degree of interrelationship or co-dependency. Thus, in *Carvel Corp.*, which involved a special rule regarding promissory notes and bills of exchange, the court noted that one set of agreements was executed "for the sole purpose of making payments under [the other agreement]." 930 F.2d at 233. Likewise, in *Commander Oil*, the court noted, with respect to the two co-signed agreements, that "[e]ach depended on the other; neither stood alone." 991 F.2d at 53. These situations are wholly distinguishable from the instant case where, on Nobel's theory, the plain and unambiguous terms of an executed contract is to be drastically altered by reference to letters that do not even qualify as contracts in their own right. Accordingly, the Court finds that

---

1. Though commonly referred to as the "parol evidence rule" (in reflection of its origins), the rule applies to all extrinsic evidence, both written and oral, and is really a rule of substantive law, designed to free the flow of commercial activity by enabling business people to rely on simple written contracts like the one here at issue.

the Co–Surety Agreement is the sole writing constituting the contract between Republic and Nobel in this case.[2]

Nobel's fall-back argument is that Nobel is absolved from any contribution resulting from RCR's default because Republic breached its obligation under the Co–Surety Agreement to consult with Nobel before taking any action in response to that default. However, the portion of the Co–Surety agreement on which Nobel relies states only that "Nobel Insurance Company does *request* that it be given the opportunity to *suggest* the use of its established attorneys, accountants, engineers and consultants, should a default occur, and that it be fully advised and kept informed on any claim matter." (emphasis added). This merely states a request, not an obligation. Moreover, it is undisputed that Nobel, when first informed by Republic of RCR's default, took the position that Nobel owed no contribution resulting from this default. Pernick Aff. in Opp., Exh. A. In the face of this refusal, Republic was under no obligation to further consult with Nobel before making a good faith effort to abide by its obligations under the Co–Surety Agreement and the Bond. *See Baker v. Northeastern Industrial Park, Inc.,* 73 A.D.2d 753, 423 N.Y.S.2d 308, 311 (3d Dep't 1979).

The Court has considered Nobel's other arguments and finds them to be without merit. Accordingly, Republic's motion for summary judgment is granted. As Nobel does not dispute Republic's statement as to the amount of Nobel's contribution due under the Co–Surety Agreement, the Court orders Nobel to pay $111,515.91 plus simple interest of 9% from the date of demand. *Gray Mfg. Co. v. Pathe Industries, Inc.,* 33 A.D.2d 739, 305 N.Y.S.2d 794, 796 (1st Dep't 1969), *aff'd* 26 N.Y.2d 1045, 312 N.Y.S.2d 200, 260 N.E.2d 821 (1970). Final judgment shall not be entered, however, until resolution of the remaining aspects of the case, involving Nobel's third-party claim, as to which all parties involved in the third-party claim are directed

to appear in Court on May 14, 1998 at 5:00 P.M.

SO ORDERED.

---

**2.** Moreover, even if resort to the letters were not otherwise barred, the letters do not support the interpretation Nobel offers for them, for nowhere

do they say that Nobel agrees to be surety only for Hudson.