**NOBEL INSURANCE COMPANY,**
Plaintiff,

v.

**HUDSON IRON WORKS, INC., James Giannopoulos, Cathy Giannopoulos, Philippos Kapnisis and Melani Kapnisis, Defendants.**

No. 98 Civ 4815(RMB).

United States District Court,
S.D. New York.

April 21, 1999.

Joseph Patrick Asselta, Agovino & Asselta, LLP, New Hyde Park, NY, Martha Connolly, Ernstman, NY, for Plaintiff.

Michael McDermott, Scotto, Georgoulis et al., New York City, for Defendants.

## ORDER

BERMAN, District Judge.

Plaintiff Nobel Insurance Company ("Nobel") has moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), against defendants Hudson Iron Works, Inc., James Giannopoulos, Cathy Giannopoulos, Philippos Kapnisis and Melani Kapnisis ("Hudson Defendants").

**For the reasons set forth below, Nobel's motion for summary judgment is granted in part and denied in part.[1]**

## I. BACKGROUND

The relevant facts are as follows. On or about August 24, 1993, the Hudson Defendants, among others, executed a document

---

1. "Partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case ... [t]his adjudication accelerates litigation by framing and narrowing the triable issues, and by eliminating, before trial, matters that contain no genuine issue of material fact." *Meek v. Metropolitan Dade County*, 805 F.Supp. 958, 963 (S.D.Fla.1992) (citations omitted). *See also Lovejoy Electronics, Inc. v. O'Berto*, 616 F.Supp. 1464, 1473 (N.D.Ill. 1985).

styled Application for Performance and Payment Bonds and Indemnity Agreement ("Indemnity Agreement"). For certain consideration given by the Hudson Defendants under the Indemnity Agreement, Nobel and Republic Western Insurance Company ("Republic Western") executed a payment bond and performance bond, on behalf of the Hudson Defendants, among others, in the amount of $3,205,500. The bonds pertained to a construction contract awarded by the Triborough Bridge and Tunnel Authority ("TBTA") to RCR Builders, Inc. ("RCR") for the construction of a new maintenance facility at the Verranzano Narrows Bridge in Brooklyn, New York. The Indemnity Agreement identified the Hudson Defendants, among others, as "applicant" and "Indemnitor." The Indemnity Agreement also identified Nobel and Republic Western as the "Sureties," and provides, in relevant part that the Hudson Defendants:

> ... hereby jointly, severally and unconditionally agree to indemnify and reimburse the Sureties and each of them from and against any and all loss, costs, damages, expenses and attorneys' fees, and any and all liability arising, resulting, sustained or incurred, or which can or may arise, result from or be sustained or incurred by said Sureties, or any of them, by reason of having executed said bonds, or any bond or bonds required by said applicants and given by said Sureties, or any of them, in connection with the performance of said contract ...

The Indemnity Agreement states that the "Amount of Obligation Assumed" by each of the Hudson Defendants is $330,000.[2]

On or about August 27, 1993, Nobel and Republic Western executed a document styled Co–Surety Agreement. The Co–Surety Agreement provides, in relevant part, that:

> The respective obligations and liabilities of the parties hereto for all claims, demands and losses under the Bond shall be limited ... to the following proportions: In the case of Republic Western Insurance Company the proportion that $2,875,500 bears to the penalty of the Bond. In the case of Nobel Insurance Company the proportion that $330,000 bears to the penalty of the Bond [i.e., 10.3%].

**Prior Proceedings**

In 1995, RCR defaulted with respect to its involvement in the construction project, as a result of which Republic Western incurred expenses of $1,082,678.88 in bringing the project to completion. Thereafter, Republic Western commenced an action in this Court, before the Honorable Jed S. Rakoff, to recover Nobel's contribution allegedly owed under the Co–Surety Agreement for the losses, costs, expenses and fees incurred under the bonds which amounted to $111,515.91, plus interest.[3]

On February, 13, 1998, in the proceedings before Judge Rakoff, Republic Western and Nobel cross-moved against one another for summary judgment under the Co–Surety Agreement. By Order dated May 1, 1998, Judge Rakoff granted Republic Western's motion and denied Nobel's motion. Judge Rakoff ordered Nobel to pay to Republic Western the amount of $111,515.91, plus interest, for its proportionate share of the losses, costs, expenses and fees incurred under the bonds as of June 26, 1997. *Republic Western Insurance Co. v. Nobel Insurance Co.*, 2 F.Supp.2d 548 (S.D.N.Y.1998).

**2.** The other applicant Indemnitors, i.e., RCR, Vasilios Xanthakos, Venus Deliganis and Demetrios Xanthakos ("RCR Defendants"), each assumed an obligation of $2,875,500.

**3.** Nobel, in turn, commenced a third-party action against the RCR Defendants for indemnity based upon the Indemnity Agreement. On June 12, 1998, Nobel moved for summary judgment against the RCR Defendants based on the Indemnity Agreement. By Order, dated June 18, 1998, Judge Rakoff granted Nobel's motion and directed the RCR Defendants to indemnify Nobel for the full amount of the sums it was obligated to pay Republic Western (i.e., $111,515.91, plus interest).

Republic Western subsequently sued Nobel in this Court (again, before Judge Rakoff) to recover an additional $95,565.31, representing additional losses, costs, expenses and fees incurred under the bonds after June 26, 1997.

Nobel later settled with Republic Western by agreeing to pay them the total amount of $170,000 covering losses, costs expenses and fees incurred under the bonds both before and after June 26, 1997. This amount was in satisfaction of both the judgment issued by Judge Rakoff of $111,-515.91 and Republic Western's claim in the second action before Judge Rakoff seeking an additional $95,565.31. Nobel has since paid the sum of $170,000 and, thus, has incurred a total loss under the bonds of $170,000. Nobel has not collected any monies from the RCR Defendants for its losses.

### This Proceeding

On July 8, 1998, Nobel brought the instant action for, *inter alia,* indemnification from the Hudson Defendants. On August 11, 1998, the Hudson Defendants filed an Answer and Counterclaims.[4] On February 17, 1999, Nobel filed the instant motion for summary judgment. Oral argument was held on March 19, 1999.

## II. DISCUSSION

### Summary Judgment Standard

Summary judgment may be granted only when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *See Fran Corp. v. United States,* 164 F.3d 814, 816 (2d Cir.1999). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In assessing whether summary judgment is appropriate, the Court must " 'resolve all ambiguities and draw all reasonable inferences against the moving party.' " *See Fran Corp.* 164 F.3d at 816 (citation omitted). However, Fed.R.Civ.P. 56 jurispru-

dence is clear "that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### Issue Preclusion

■ Preliminarily, the Court does not accept Nobel's argument that the Hudson Defendants are precluded from relitigating here certain issues litigated and decided in the proceedings before Judge Rakoff. Four elements must be met before issue preclusion is appropriate: (1) the issues of both proceedings must be identical; (2) the issues must have been litigated and decided in the prior proceeding; (3) there must have been full and fair opportunity for the litigation of the issues in the prior proceeding; and (4) the issues were necessary to support a valid and final judgment on the merits. *See Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir.1995). Issue preclusion binds not only the parties to a prior proceeding but also their privies. *See Conte v. Justice,* 996 F.2d 1398, 1402 (2d Cir.1993). *Cf. Garver v. Brown & Co. Securities Corp.,* 1998 WL 54608 at *4 (S.D.N.Y. Feb. 10, 1998), *remanded by,* 164 F.3d 617 (2d Cir.1998) ("the Second Circuit instructs courts to 'flexibly apply the privity concept in determining whether claim preclusion exists. Res judicata may bar a second suit even in the absence of literal privity' ") (citations omitted).

■ Here, Nobel cites the *Conte* case for the proposition that, although they were not parties in the prior proceedings before Judge Rakoff, the Hudson Defen-

---

**4.** The Hudson Defendants filed an Amended Answer and Counterclaims on September 2, 1998. The Hudson Defendants' counterclaims are not at issue here.

dants exercised practical control over those proceedings in that Nobel tendered its defense to Hudson. *See Conte*, 996 F.2d at 1402 ("[a]mong other things, privity has been held to include those who, although not actual parties, exercise practical control over an action"). Nobel's reliance upon *Conte* is misplaced because, among other reasons, in the proceedings before Judge Rakoff, although Nobel may have tendered its defense to Hudson, it is undisputed that prior to entry of a final judgment, Nobel fired Hudson's attorneys. (Opp.Aff., ¶ 48). The fact that Nobel had the power to fire Hudson's attorneys raises an issue as to whether Hudson can be said to have been a party to the prior proceedings or to have exercised "practical control" over those proceedings.

In addition, the issue of the Hudson Defendants' liability to Nobel was not litigated before Judge Rakoff. The prior proceedings involved (i) the relationship between Nobel and Republic Western and (ii) the relationship between Nobel and the RCR Defendants. It did not involve the Hudson Defendants' liability to Nobel under the Indemnity Agreement.[5] (Opp.Br., pp. 6–7).

Thus, while the issues before Judge Rakoff and those at bar are closely related, they are not sufficiently identical to give rise to issue preclusion.[6]

### Extrinsic Evidence

█ Nobel also argues that, pursuant to the Indemnity Agreement and the Co–Surety Agreement, the Hudson Defendants are obligated to indemnify Nobel in the amount of $170,000, which as noted, represents the settlement of the $111,-515.91 (Judge Rakoff) judgment plus the $95,565.31 claim. Here, Nobel is on firmer ground. The Indemnity Agreement provides that the Hudson Defendants jointly,

severally and unconditionally agree to indemnify Nobel (and Republic Western) for all losses, costs, ·damages, expenses and attorneys' fees, up to $330,000, incurred under the bonds. *See General Accident Insurance Co. of America v. Merritt–Meridian Construction Corp.*, 975 F.Supp. 511, 515–16 (S.D.N.Y.1997) (indemnity agreements such as this "are valid and enforceable under New York law"). The language of the Indemnity Agreement reflects the Hudson Defendants clear and unmistakable obligation (and intent) to indemnify Nobel. The Co–Surety Agreement provides that Nobel's liability was capped at $330,000, and, more particularly, was limited with respect to a claim to the proportion that $330,000 bore to the $3,205,500 total exposure on the bond (i.e., 10.3%). **Both of these Agreements are written, clear, unambiguous, fully executed, and consistent with one another.**

The Hudson Defendants contend that the Court should go (well) beyond these clear Agreements, and should consider two other documents which they say, alter and modify the plain meaning of the Agreements, namely a letter and a fax cover sheet each dated August 27, 1993. The Hudson Defendants would also have the Court consider the parties' (pre-litigation) conduct, as testified to by Nobel's alleged agent, Lenora Cape, to alter the terms of the Indemnity and Co–Surety Agreements so that the Hudson Defendants' liability is limited to losses traceable (only) to Hudson's work on the Verranzano Bridge project.

As noted, the Indemnity Agreement and the Co–Surety Agreement are plain and unambiguous on their face and neither provides that the Hudson Defendants' liability is limited in the fashion suggested by the Hudson Defendants, i.e., to losses traceable only to work performed by Hud-

---

5. Here it is claimed that the Indemnity Agreement is subject to certain extrinsic evidence which limited the Hudson Defendants' liability to losses traceable to Hudson's own work. The substantive issue of the admissibility of extrinsic evidence is addressed below.

6. Though Judge Rakoff's rulings in the prior proceedings are not necessarily binding here, they are well researched, clear, instructive and very persuasive.

son. *See Slatt v. Slatt,* 64 N.Y.2d 966, 488 N.Y.S.2d 645, 477 N.E.2d 1099, 1100 (1985), *reargument denied,* 65 N.Y.2d 785, 492 N.Y.S.2d 1026, 482 N.E.2d 568 (1985) ("[w]here the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used"). Thus, the Hudson Defendants' effort to go beyond the written Agreements is "barred by the settled principle of New York law (here applicable) that extrinsic evidence, whether oral or written, is not admissible to vary or contradict the terms of an integrated written contract clear on its face." *Republic Western Insurance Co. v. Nobel Insurance Co.,* 2 F.Supp.2d 548, 549 (S.D.N.Y.1998). *See also Farm Stores, Inc. v. School Feeding Corp.,* 79 A.D.2d 504, 433 N.Y.S.2d 453, 455 (N.Y.App.Div.1980), *aff'd,* 53 N.Y.2d 910, 440 N.Y.S.2d 633, 423 N.E.2d 56 (1981) ("[p]arol evidence, whether oral or written, is not admissible to vary or contradict the terms of a written contract clear on its face. The written agreement speaks for itself").

The Hudson Defendants seek to circumvent the parol evidence rule arguing that, under New York law, "instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction are read and interpreted as one contract." (Opp.Br., pp. 7–8). The cases cited by the Hudson Defendants, i.e., *Commander Oil Corp. v. Advance Food Service Equipment,* 991 F.2d 49 (2d Cir.1993) and *Carvel Corp. v. Diversified Management Group, Inc.,* 930 F.2d 228 (2d Cir.1991), concerned co-signed (executed) writings exhibiting a high degree of interrelationship. These cases are inapposite to the case at bar. Here the Hudson Defendants' seek to rely on, at best, inconclusive, **unexecuted,** one-sided documents to markedly alter the terms and plain meaning of the Indemnity Agreement and Co–Surety Agreement. *See Republic Western Insurance Company,* 2 F.Supp.2d at 549. *Cf. Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 299 (2d Cir.1996) (stating that parol evidence is not admissible even to prove ambiguity).[7]

Here, some extrinsic evidence relied upon by the Hudson Defendants "do[es] not [even] involve the same parties." *Packer v. TDI Systems,* 959 F.Supp. 192, 199 (S.D.N.Y.1997) (where the Court found that "TDI and STS are both parties to both documents; but Packer and DesOrmeaux are not parties to the Subordination Agreement"). The instant Indemnity Agreement was executed by the Hudson Defendants and the RCR Defendants; the Co–Surety Agreement was executed by Nobel and Republic Western. The letter and the fax cover sheet cited by the Hudson Defendants were unexecuted, one-sided documents that do not remotely qualify as contracts.[8]

Moreover, the proffered extrinsic "evidence," does not appear to support the Hudson Defendants position. The meanings of the letter and the fax cover sheet are not discernable from the text. If the parties intended to alter the Agreements, they would have done so. *See Braten,* 468 N.Y.S.2d 861, 456 N.E.2d at 805 (Court must determined " 'whether or not the agreement was one which the parties would ordinarily be expected to embody in

**7.** Nor does the absence of a "merger clause" in the Agreements affect this Court's determination. *See Braten v. Bankers Trust Co.,* 60 N.Y.2d 155, 468 N.Y.S.2d 861, 456 N.E.2d 802, 805 (1983), *reargument denied,* 61 N.Y.2d 670, 472 N.Y.S.2d 1028, 460 N.E.2d 232 (1983) ("[i]n the absence of a merger clause ... the court must determine whether or not there is an integration 'by reading the writing in the light of surrounding circumstances, and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing' ") (citations omitted).

The Co–Surety Agreement contains language which was clearly intended as an "amendment;" thus, the parties thereto clearly knew how to go about reflecting the terms of their understanding "in the writing."

**8.** In their papers, the Hudson Defendants consistently mischaracterize the August 27, 1993 letter as a "letter agreement."

the writing' ").  As noted, the parties did (clearly) make changes on the Agreements, for example, they made an addition to Paragraph 5 of the Co–Surety Agreement which was typed directly onto the second page.

The Court believes that the Hudson Defendants' argument also flies in the face of common business sense.  Prior to awarding the construction contract, the TBTA required a performance and payment bond for the full amount of the contract, i.e., $3,205,500.  It would seems highly unlikely that the TBTA would agree to limit Nobel's portion of this obligation to (only) those losses traceable to Hudson's work, as this would not afford the TBTA full protection for all aspects of the construction project.[9]  In any event, such limitation of liability was never included in either the Indemnity Agreement or the Co–Surety Agreement.

Accordingly, the Court holds that extrinsic evidence is not admissible to alter the clear and unambiguous terms of the Indemnity Agreement and the Co–Surety Agreement.

### Indemnity Agreement

Paragraph 4(b) of the Indemnity Agreement provided Nobel with discretion to settle claims, stating that:

> The Sureties shall have the right, and are hereby authorized, but not required: (b) To adjust, settle or compromise any claim, demand, suit or judgment upon said bonds, or any of them, unless the applicants shall request the Sureties to litigate such claim or demand, or to defend such suit or to appeal from such judgment, and shall deposit with the Sureties at the time of such request cash or collateral satisfactory to them in kind and amount to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs and attorneys' fees.

"Sureties enjoy such discretion to settle claims because of the important function they serve in the construction industry ..." *General Accident Insurance Co. of America,* 975 F.Supp. at 516.  Paragraph 6 of the Indemnity Agreement provided that the Hudson Defendants would not be liable for any settlement made in contravention of the requirements of Paragraph 4(b).

■ The Hudson Defendants argue that, even if the Court were to accept Nobel's interpretation of the Indemnity and Co–Surety Agreements, Nobel's motion should still be denied because Nobel violated Paragraph 4(b) of the Indemnity Agreement principally because "Hudson was not notified of, or permitted to participate in, the litigation and/or settlement decisions or discussions."  (Opp.Aff., ¶ 58).

The Court believes that there are several issues of material fact that are in dispute in this regard and, therefore, not susceptible to resolution by a motion for summary judgment as follows:  (i) whether the Hudson Defendants were entitled to (but denied) the opportunity to appeal Judge Rakoff's decision, and (ii) whether Nobel concluded a settlement in accordance with Paragraph 4(b) of the Indemnity Agreement.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Nobel's motion for summary judgment is granted in part and denied in part.  It is hereby ordered that:

(i) the Hudson Defendants are not precluded from litigating this case under the doctrine of issue preclusion;

(ii) extrinsic evidence is not admissible to alter the clear terms of the Indemnity Agreement and the Co–Surety Agreement, and

(iii) issues of material fact concerning Nobel's compliance with Paragraph 4(b) of

---

**9.**  This point is confirmed in Judge Rakoff's decision which found that Nobel was a co-surety liable for a portion of the losses attrib-utable to RCR's default.  *Republic Western Insurance Co. v. Nobel Insurance Co.,* 2 F.Supp.2d 548 (S.D.N.Y.1998).

the Indemnity Agreement along with the Hudson Defendants' counterclaims will be resolved in the trial of this action.

The parties are hereby directed to appear at a status/scheduling conference on May 14, 1999, at 3:00 p.m., in Courtroom 706 of the U.S. Courthouse, 40 Centre Street, New York, New York.

**SO ORDERED.**