**STATE INSURANCE FUND individually and as subrogee of Kaback Enterprises, Inc., Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE CO., Defendant.**

**No. 00 Civ. 1595(RMB).**

United States District Court, S.D. New York.

Nov. 18, 2002.

Kaback Enterprises Inc., Alan W. Altman, Moskowitz Altman & Hughes State Ins. Fund, Thomas Dillon, Gilroy Downes Horowitz & Goldstein, New York, NY, Joseph Carofano, Velella, Velella, Basso & Calandra, Bronx, NY, for Plaintiff.

Marshall T. Potashner, Jaffe & Asher, New York, NY, for Defendant.

### DECISION AND ORDER

BERMAN, District Judge.

### I. Background

This is an action by the New York State Insurance Fund ("Plaintiff" or "SIF") brought on its own behalf and on behalf of its subrogee, Kaback Enterprises, Inc. ("Kaback"). Plaintiff is seeking a declaratory judgement that defendant Liberty Mutual Insurance Company ("Defendant"

or "Liberty Mutual") must indemnify Kaback and contribute half of a two million dollar settlement (i.e. one million dollars) the SIF entered into on behalf of Kaback on July 28, 2000. The parties have each filed motions for summary judgment.

The settlement at issue arises from an accident that befell Steven Flamio ("Flamio"), an employee of Kaback, more than ten years ago. On December 7, 1991, Flamio, working with employees of Coolwind Ventilation, Inc. ("Coolwind"), was removing an air conditioning unit from an elevator motor room when he injured his back. Kaback had been hired by the property owner Silverstein Properties, Inc. ("Silverstein"); Kaback, in turn, hired Coolwind to act as the sub-contractor on the air conditioner project.

At the time of the accident, Kaback was covered by (at least) two insurance policies, one issued by Liberty Mutual for general commercial liability, and the other issued by the SIF for workers' compensation and employers' liability. The Liberty Mutual policy, which is the subject of this action, covered "those sums that the insured [Kaback] becomes legally obligated to pay as damages because of 'bodily injury' ... to which this insurance applies." (Affidavit of Lek M. Hasan, dated Apr. 25, 2001 ("Hasan Aff."), Exhibit 1). The policy also contained a number of exclusions, one of which provided that the "insurance does not apply to ... '[b]odily injury' to ... [a]n employee of the insured arising out of and in the course of employment by the insured." *Id.*[1]

Following the accident, Flamio filed two different lawsuits. On February 1, 1994, Flamio brought suit against Silverstein and Coolwind in New York State Supreme Court in the Bronx. Coolwind (but not

---

**1.** While the "employee exclusion" applied to "any obligation to share damages with or repay someone else who must pay damages because of the injury," it did not apply "to liability assumed by the insured under an 'insured contract' " Hasan Aff., Exh. 1.

548

Silverstein) filed a third-party claim against Kaback. On November 6, 1994, Flamio filed a second action, in New York State Supreme Court in the Bronx, naming Otis Elevator, Inc. ("Otis") as defendant. Otis filed third-party claims against Kaback, Silverstein and Coolwind, and Silverstein filed cross-claims against Kaback and Coolwind. On June 9, 1995, the action against Otis was consolidated with the action against Silverstein and Coolwind ("Bronx Action"). Flamio's claim against Otis (and Silverstein's cross-claim against Kaback) was dismissed on August 23, 1999.

On July 17, 1997, Silverstein filed an action in New York State Supreme Court in Westchester County, seeking a declaratory judgment that either Kaback or Liberty Mutual was required to provide indemnification in the Bronx Action ("Westchester Action"). Specifically, Silverstein sought an order declaring either that it (Silverstein) was an "additional insured" under the Liberty Mutual policy, or that Kaback had violated its contractual agreement by failing to name Silverstein as an additional insured. In a decision dated May 13, 1999, Justice Aldo A. Nastasi found that Silverstein was not an additional insured under the Liberty Mutual policy and that Kaback had violated its contractual duty to obtain insurance covering Silverstein. "Silverstein is entitled to a judgment ... declaring ... that defendant Kaback is responsible to the plaintiff Silverstein for all resulting damages including payments in the discharge of liability to Flamio in the underlying action and for all costs and attorneys fees incurred by the plaintiff Silverstein in defending said action." *National Union Fire Ins. Co. v. Liberty Mutual Ins. Co.,* No. 102999, Slip Op. at 5 (Sup.Ct.West. Cty. May 13, 1999).

On June 9, 2000, a jury in the Bronx Action returned a verdict awarding Flamio $11.745 million, finding Coolwind to be 60 percent liable and Kaback liable for the remaining 40 percent. Following the verdict, on July 28, 2000, the parties settled the Bronx Action, by agreeing to pay Flamio $7.025 million, with Coolwind paying $5 million, SIF (on behalf of Kaback) paying $2 million and Silverstein paying $25,000.

The instant action—i.e. the fourth action—was originally filed in New York State Supreme Court in the Bronx and was removed to this Court on March 1, 2000. Defendant filed a motion for summary judgment on April 30, 2001. Plaintiff then filed a cross-motion for summary judgment on July 19, 2001. On August 22, 2001, Liberty Mutual filed a reply memorandum, and SIF also filed a reply on September 19, 2001.

## II. Standard of Review

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir. 1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are material issues of fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the non-

moving party which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)); *accord Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir.1993). The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Gallo*, 22 F.3d at 1223.

When cross-motions for summary judgment are made the standard is the same as that for individual motions for summary judgment. *See Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). Each motion must be considered independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party. *See id.*

### III. Analysis

Defendant argues that its policy, because of the employee exclusion, only covers contractual claims and because there were no contractual claims pending against Kaback when the Bronx Action was settled it has no duty to indemnify. Def. Mem. at 13. Plaintiff argues that the Liberty Mutual policy was not limited to contractual claims because the employee exclusion was not raised in a timely manner and that Defendant was, therefore, responsible for any claims (common-law and contractual) settled as part of the Bronx Action. Pl. Mem. at 13. Plaintiff also argues that

even if Liberty Mutual were only responsible for contractual claims, those claims were "necessarily and logically" part of the settlement in the Bronx Action, particularly in light of Justice Nastasi's ruling in the Westchester Action. Pl. Mem. at 14.

Both parties' motions turn on disputed questions of material fact. Indeed, the two sides dispute virtually every relevant fact at issue in the case, including, *inter alia:* (i) the scope of the claims covered by the settlement of the Bronx Action, *see, e.g., Vreeland v. Cardi*, 134 F.Supp.2d 270, 274 (E.D.N.Y.2000) ("To prevail here, the moving parties must show the absence of any factual question as to the proper allocation of the settlement funds."); (ii) whether or not Liberty Mutual received timely notice of the Bronx Action, *see, e.g., Sphere Drake Ins. Co. v. Y.L. Realty Co.*, 990 F.Supp. 240, 242 (S.D.N.Y.1997) ("Whether notice has been timely is generally a question of fact ...."); (iii) whether Liberty Mutual timely disclaimed coverage based on the employee exclusion, *see e.g., U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel*, 900 F.Supp. 641, 647 (E.D.N.Y.1995) ("As with a notice-of-occurrence claim, questions of fact concerning reasonableness of the delay in a notice of disclaimer are generally reserved for the trier of fact."); and (iv) whether Liberty Mutual had a full and fair opportunity to participate in the Bronx Action, *see, e.g., Nobel Ins. Co. v. Hudson Iron Works, Inc.*, 51 F.Supp.2d 408, 414 (S.D.N.Y.1999) (allegation that defendant "was not notified of, or permitted to participate in, the litigation and/or settlement decisions or discussions"). Moreover, the parties have failed even to establish, much less agree, which facts are necessary to determine their motions. In short, both sides have failed to establish a basis for summary judgment and the finder of fact should

decide the disputed material issues.[2]

## IV.   Conclusion

For the foregoing reasons, the motions for summary judgment are denied.  The parties are directed to participate in a trial scheduling/settlement conference on December 11, 2002 at 10:00 a.m., in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. **The parties are directed to engage in good faith settlement negotiations prior to the conference.**

2.   The issues can and will be further refined in connection with the pre-trial order.